Benjamin BERNSTEIN, Appellant,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Appellee.

No. 13625.

United States Court of Appeals Third Circuit.

Argued Nov. 2, 1961.

Decided Jan. 8, 1962.

Certiorari Denied May 21, 1962.

See 82 S.Ct. 1161.

---

Benjamin Bernstein pro se.

John G. Laughlin, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Joseph S. Lord, III, U. S. Atty., Philadelphia, Pa., Mark R. Joelson, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The district court sustained administrative decision requiring refund of Social Security benefits by plaintiff and latter appeals.

Appellant was born on September 15, 1886. He worked as a law clerk in his brother's law office for a number of years. He was admitted to the bar himself in 1950 when he was sixty-four years old. He has practiced law as a self-

employed lawyer in Philadelphia since September 1951. During that period he has been an investing partner in a knitting mill. In 1951 he was awarded Social Security benefits of $68.50 a month effective September 1951. By the 1954 amendments to the Act these were increased to $88.50 monthly, effective September 1, 1954. As of the latter date appellant's wife was awarded benefits in the sum of $44.30 a month. Both benefits were paid during 1955 and 1956. These were recomputed in 1957 to total $162.80 monthly, effective July 1956.

Thereafter the Bureau determined appellant had received income from a trade or business in which he had rendered substantial services in excess of $2,080 during each of the years 1955 and 1956 and that he was not entitled to benefits for any month of either of those taxable years except for August 1956 when he was on vacation. Appellant and his wife were found to have been overpaid the sum of $1,593.60 for 1955 and $1,430.80 for 1956.

The Social Security Administration Referee upheld the deductions for 1956 but denied them for 1955. The basis of the latter finding was that since appellant's 1955 net income from his law practice in which he had rendered substantial service in all months was less than $1200 [1] his benefits were not subject to deduction although he had received income of more than $30,000 that year from his knitting mill interest. The Appeals Council sustained the Referee on his 1956 deductions. Regarding the 1955 benefits, the Council held these properly subject to deductions. Appellant brought that decision to the district court for review under Section 205(g) of the Act (42 U.S.C.A. § 405(g)). Both sides moved for summary judgment. It was conceded that no substantial question of fact existed and that summary judgment procedure should be followed. The questions of law were briefed and argued with reference to appellant alone. The district court in an admirable opinion upheld the deductibility of both taxable years.[2] We think the decision sound.

Though appellant's first two points were passed upon by us in Price v. Flemming, 280 F.2d 956 (1960), cert. den. 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961), we deem it helpful to again discuss them in some detail.

Prior to the 1954 amendments, income derived from "the performance of service by an individual in the exercise of his profession as a * * * lawyer * * *" was not applicable in determining earnings under the Act. 42 U.S.C.A. (1952 ed.) §§ 411, 403(b). In 1954, the Act was amended (42 U.S.C.A. § 403) inter alia to make deductions applicable " * * * from any payment or payments under this title, to which an individual is en-entitled * * *" and charging such individual " * * * with any earnings under the provisions of subsection (e) of this section * * *". Section 403(b) (1). (Emphasis supplied). And 403(e) (4) (B), outlining the method of determining an individual's net earnings from self-employment, was amended to specifically eliminate the application thereto of Section 211(c) (5) which, as above noted, had made earnings of lawyers self-employed in their profession, not applicable in determining earnings from which deductions should be made under the Act.

Appellant urges that the 1954 amendments were intended to operate prospectively. Disclaiming any attack on the constitutionality of the amendments, he contents himself with the assertion that the administrative retroactive interpretation of them is at fault.

As has been already seen, the 1954 amendments specifically apply the new deduction provisions to all future benefit payments irrespective of the date an

[1]. Actually appellant's net earnings from his law practice in 1955 amounted to $1,030.50. It is noted that his gross earnings that year from said practice totaled $7,843.99.

[2]. 192 F.Supp. 138 (1961).

individual became entitled to benefits. The new deduction provisions which affect our problem are the result of amending (b) (1) and (e) of Section 203. Concerning subsection (b) (1) the Act states that the 1954 amendment "shall be applicable in the case of monthly benefits under title II of the Social Security Act for months in any taxable year (of the individual entitled to such benefits) beginning after December 1954. * * * " 68 Stat. 1077, 42 U.S.C.A. § 403 note. So, by the definitive language of the Act itself the 1954 deduction amendments apply to all monthly benefits payable after January 1, 1955 regardless of their inception. The legislative history completely supports that view. House Report 1698, 83rd Cong. 2nd Sess. p. 70. House Conf.Report 2679, 83rd Cong. 2nd Sess., U.S.C.Cong. and Admin.News, p. 3780. It follows that the administrative finding to this effect is merely the proper acceptance of and adherence to the statute. House Report 1698, supra, p. 21 makes it very clear that the Congressional action was taken in order to end the unfairness of this portion of the Social Security Act which had enabled full benefits to be drawn by individuals working in non-covered employment and self-employment regardless of the amounts received from those sources. The amendment was remedial. It caused all income of an individual to be considered on the question of benefits. It thereby deliberately not only removed an unwitting source of favoritism from the Act respecting individuals qualifying for benefits after January 1, 1955 but stopped any further benefits of this type which emanated from earlier qualification.

As we have indicated the identical question of whether the 1954 amendments affected benefits where the individual has established his eligibility prior to January 1955 was presented in Price v. Flemming, supra. Appellant participated in the appeal to this court of that suit as amicus curiae. Construing the amendments noted above, we there held in effect that while the statute could have been more precise it did make deductions applicable from any payments to which the person was entitled; it charged that person with any earnings under Section 403, Subsection (e) and in determining self-employment net earnings, it dropped the self-employed practice of law from the exclusions to the definition of self-employment thus making earnings from that source available for deductions from benefits. Reexamination of the amendments confirms that view.

■ Appellant next argues that, what he describes as the administrative interpretation of the 1954 amendments, deprived him of vested property rights, contrary to the Fifth Amendment. He attacks the Price decision as erroneously relying on Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). He repeats the distinctions between the facts in the latter and Price and quotes several portions of both the majority and dissenting opinions, commenting thereon. He fails utterly to mention the opinion's controlling general language characterizing the interest of an employee covered by the Act as "non contractual" (p. 610, 80 S.Ct. p. 1372) and (pp. 610–611, 80 S.Ct. pp. 1372–1373) stating that "To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands. * * * It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving it '[t]he right to alter, amend, or repeal any provision' of the Act. § 1104, 49 Stat. 648, 42 U.S. C. § 1304, 42 U.S.C.A. § 1304. That provision makes express what is implicit in the institutional needs of the program. See Analysis of the Social Security System, Hearings before a Subcommittee of the Committee on Ways and Means, House of Representatives, 83d Cong., 1st Sess., pp. 920–921. It was pursuant to that provision that § 202(n) was enacted."

The Court then specifically held:

"We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of 'accrued' interests violative of the Due Process Clause of the Fifth Amendment.

## II.

"This is not to say, however, that Congress may exercise its power to modify the statutory scheme free of all constitutional restraint. The interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause. In judging the permissibility of the cut-off provisions of § 202(n) from this standpoint, it is not within our authority to determine whether the Congressional judgment expressed in that section is sound or equitable, or whether it comports well or ill with the purposes of the Act. 'Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom.' *Helvering v. Davis*, supra, [301 U.S. 619] at 644 [57 S.Ct. 904, at 910, 81 L.Ed. 1307]. *Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.*" (Emphasis supplied.)

We said in Price, 280 F.2d, pp. 958–959:

"It is the fact that Nestor, as stressed by both appellant and the amicus curiae, was not eligible for benefits under the Act until after the statute covering deportation because of past Communist membership became effective. Nestor, states appellant, therefore had no accrued property right. But the Supreme Court did not decide Nestor on that narrow ground. It expressly rejects the concept of accrued property rights as being a part of the Social Security System. It describes in terms certain the identical benefit with which we are dealing as 'a noncontractual benefit under a social welfare program.' Its clear mandate leaves to us only the determination of whether the inclusion of practice of law income in deductions from Social Security benefits by the 1954 Amendments 'manifests a patently arbitrary classification, utterly lacking in rational justification.' And with the 1954 Amendment including all income [the reference here is of course to all income from "net earnings from self-employment"] without any exception in the deductions for benefits under the Act, it is not possible to reasonably suggest that the Congressional decision abolishing preferential treatment for lawyers in this statute is 'a patently arbitrary classification, utterly lacking in rational justification.'"

We are satisfied that our above conclusion was and is sound and that it rightly controls our decision on the "vested rights" contention before us.

■ Appellant as his final point urges that there should be no deductions from his 1955 benefits because he earned less than $1200 that year as a self-employed lawyer. He argues that his other earnings of $30,000 plus are not available for deductions from his benefits since he did not perform any personal services in the business. This view is contrary to the directive of the statute and to the intendment of the Act.

While the Act is necessarily voluminous and unavoidably complex its disposal of the present problem comes through clearly. By section 203(e) (1) (42 U.S.C.A. § 403(e) (1)), the excess over $1200 yearly earnings is deductible

at the rate of $80 a month. Where the yearly earnings exceed $2080, there is an $80 monthly deduction and no benefits are payable. Section 203(e)(2)(D) states that no month can be charged with earnings where the beneficiary "did not engage in self-employment." Under 403 (e)(3)(B), the beneficiary *"will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfaction of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business the net income or loss of which is includible in computing * * his net earnings or net loss from self-employment for any taxable year."* (Emphasis supplied).

Under the above unmistakable language an individual can be held not to have been engaged in self-employment only where he has "rendered no substantial services * * * with respect to any trade or business the net income or loss of which is includible in computing * * * his net earnings or net loss from self-employment * * *." It must follow that in those circumstances alone is the individual freed from being charged with "earnings" in accord with Section 203(e)(1). During each month of 1955 appellant rendered substantial services in his law practice. By Section 203(e) (3)(B)(i) he was presumed therefore to have been engaged in self-employment in all months. Section 203(e)(2) outlines the method of charging earnings in all months as called for by Section 203 (e)(1). The yearly "earnings" upon which the deductions were imposed by 203(e)(1) are defined in 203(e)(4)(A) as "net earnings from self-employment" and "self-employment", defined in the applicable Section 411, includes a partnership of which the individual is a member.

There is no adequate refutation of the above statutory sequence. In our judgment it forces inclusion of appellant's 1955 partnership earnings as part of his earnings for that year under Section 203 (e)(1) and makes them, with appellant's 1955 earnings from his self-employment practice of law, subject to deduction as outlined in that subsection.

■ The Secretary suggests that the administrative construction of the Act with which we are here dealing is not to be overturned unless clearly wrong or unless a different construction is required. Federal Housing Administration v. Darington, Inc., 358 U.S. 84, 90, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958); United States v. American Trucking Associations, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). We agree and reiterate our affirmative approval of his interpretation of the Act with respect to the applicability for deductions of appellant's partnership earnings.

The Secretary also stresses the consistency of the administrative construction of the statute in this connection with the legislative intent. It seems to us that this cannot be successfully contraverted. Appellant protests strenuously that Congress did not demand "cessation of labor or retirement" as a prerequisite to eligibility for benefits. That is true but it is also true that the prime purpose of the Act was " * * * to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor." Social Security Board v. Nierotko, 327 U. S. 358, 364, 66 S.Ct. 637, 640, 90 L.Ed. 718 (1946). As long ago as 1936 Mr. Justice Cardozo said in Helvering v. Davis, 301 U.S. 619, 641, 57 S.Ct. 904, 909, 81 L.Ed. 1307, "The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." Within the limits of the Act's restrictions its benefits may be supplemented. Further, the Act does withdraw from consideration as "net earnings from self-employment" the sort of income arising from passive property ownership. It excludes by name real estate rentals, divi-

**254**

dends, interest and certain capital gains and losses. 42 U.S.C.A. § 411(a).

The simple fact is that appellant's considerable earnings from his business partnership as reasonably spelled out from the Act itself and from its certain purposes must be considered in fixing appellant's liability for deductions. Appellant insists this is inequitable. We doubt that but in any event such complaint should be made to the Congress.

The judgment of the district court will be affirmed.

BIGGS, Chief Judge (concurring).

I concur in everything in the majority opinion except as to the basis stated for the disposition of Bernstein's contention that there should be no deduction for his 1955 benefits because he earned less than $1,200 that year as a self-employed lawyer. On this point I adhere to the reasoning of the Appeals Council.