George F. DELNO, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Appellee.

No. 19348.

United States Court of Appeals
Ninth Circuit.

June 7, 1965.

J. A. Pardini, Elda Granelli, Julian Pardini, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Robert S. Marder, Charles E. Collett, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before HAMLIN, JERTBERG, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

This is an appeal from a summary judgment sustaining a decision of the Appeals Council of the Social Security Administration which denied appellant Delno's application for old-age insurance benefits under section 202(a) of the Social Security Act, 42 U.S.C.A. § 402(a).

Appellant and his wife purchased an undivided one-half interest in a thirty-unit apartment house in 1956, and entered into a contract for the operation of the property with the couple owning the other one-half interest. It was agreed that income and operating expenditures would be divided equally between the two couples. Appellant was to "act as manager of said property and apartment house, collecting the rents and accounting for all income and expenditures." In addition to his share of profits, he was to be paid $300 per month, later increased to $400, "as an operating expense * * * when the operation shows a net profit to the parties thereto."

The general purpose of the old-age, survivor and disability insurance provisions of Title II of the Social Security Act is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death, or disability.[1] Accordingly, entitlement to benefits is based upon the receipt of income from labor, which old age, death, or disability would interrupt; and not upon the receipt of income from the investment of capital, which these events would presumably not affect.[2] The ultimate problem in this case is to determine whether the statutory provisions and interpretive regulations which have been drawn with this general distinction in mind require that the payments which appellant received be treated as investment income rather than income from labor.

Under the scheme of the Act, qualifying income may be received either as "wages" (42 U.S.C.A. § 409) or "net earnings from self-employment" (42 U.S.C.A. § 411(a)). Appellant contends that the income in question falls in either one or the other of the statutory categories.

---

[1]. Social Security Bd. v. Nierotko, 327 U.S. 358, 364, 66 S.Ct. 637, 90 L.Ed. 718 (1946); S.Rep. No. 1669, 81st Cong., 2d Sess. (1950) (1950 U.S.Code Cong. Serv., p. 3288); David, 14 Ind. & Lab. Rel. Rev. 10, 11–12 (1960).

[2]. Hearings on an Analysis of the Social Security System Before a Sub-Committee of the House Committee on Ways and Means, 83d Cong., 1st Sess. 459, 504–05 (1953). See also Celebrezze v. Miller, 333 F.2d 29, 30 (5th Cir. 1964); Celebrezze v. Maxwell, 315 F.2d 727, 728 (5th Cir. 1963); Bernstein v. Ribicoff, 299 F.2d 248, 253–254 (3d Cir. 1962).

## I

Appellant's first line of argument is that his income as "manager" constituted "wages" paid to him as an "employee" of a "partnership" created by the agreement of February 1, 1956, and that further inquiry into the nature of the payments is barred by the interposition of the partnership entity, just as it would be if the employer were a corporation, under our decisions in Stark v. Flemming, 283 F.2d 410 (9th Cir. 1960) and Flemming v. Lindgren, 275 F.2d 596 (9th Cir. 1960).[3]

The Appeals Council concluded that appellant was not an "employee" within the meaning of the Act. Section 210 (j) (2) of the Act, 42 U.S.C.A. § 410(j) (2), defines the term as including those who would occupy an employee status "under the usual common law rules." The Appeals Council pointed out that "such common law rules, as explained in section 404.1004 of the Social Security Administration Regulations No. 4 (20 C.F.R. 404.1004), stress the right of the 'employer' to exercise control over the individual alleged to be an employee with respect to the manner in which the services are performed." And the Council held that "the record in the instant case does not establish that the claimant was subject to such control, or even to a 'right' of control which could make him an employee of the other partners either singly or in combination."

■■ While we do not agree with the overriding emphasis which the Council, and the regulation, appear to place upon the factor of control,[4] considering the record as a whole we think the Council's conclusion that appellant was not an "employee" was a permissible one under generally accepted criteria for determining the existence of the employee-employer relationship.[5]

## II

■ The government impliedly concedes that if appellant is excluded from the category of "employees" earning "wages", he should be included in the alternative class of persons receiving "net earnings from self-employment" derived from "trade or business carried on" by such persons or by partnerships of which they are members. 42 U.S.C.A. § 411(a). We think this concession is proper. The premise of the system established by Part II of the Act is that all gainfully employed persons are to be covered, except as specifically excluded.[6] The language of the Act is therefore to be interpreted in favor of coverage.[7] Since appellant was a member of a partnership which operated a sizable apartment house, the income which he received was clearly "self-employment" income derived from a "trade or business" within the meaning of the Act.

The government argues, however, that appellant's income fell within an express statutory exclusion.

■ In furtherance of the general purpose of the Act, section 211(a) "does withdraw from consideration as 'net earnings from self-employment' the sort of income arising from passive property ownership. It excludes by name real estate rentals, dividends, interest and

---

3. See also Brannon v. Ribicoff, 200 F. Supp. 697, 703 (D.C. Mont. 1961).

4. See Broden, Law of Social Security and Unemployment Insurance 30–31, 90–96 (1962).

5. Since the nature of the relationship could not be determined by interpretation of the contract alone, due to its ambiguity, a question of fact was presented to be determined by the Appeals Council from all of the evidence, including the agreement (Miller v. Flemming, 275 F.2d 763, 765 (9th Cir. 1960)), and the Council's determination of the issue is conclusive if supported by substantial evidence. 42 U.S.C.A. § 405(g); McMullen v. Celebrezze, 335 F.2d 811, 814 (9th Cir. 1964).

6. Schottland, 46 Calif. L. Rev. 315, 319 (1958); David, 14 Ind. & Lab. Rel. Rev. 10, 13–14 (1960).

7. St. Luke's Hosp. Ass'n v. United States, 333 F.2d 157, 164 (6th Cir. 1964); Brown & Bartlett v. United States, 330 F.2d 692, 693–694 (6th Cir. 1964); Celebrezze v. Kilborn, 322 F.2d 166, 168 (5th Cir. 1963); Ewing v. McLean, 189 F.2d 887, 892 (9th Cir. 1951).

certain capital gains and losses." Bernstein v. Ribicoff, 299 F.2d 248; 253 (3d Cir. 1962). The Appeals Council thought that appellant's income fell within the statutory exclusion of "rentals from real estate" found in section 211(a) (1).[8]

■ The Committee reports accompanying the bill which included section 211(a) (1) of the Act make it clear that not all payments which might be considered "rent" in ordinary parlance are to be excluded from self-employment net income. Thus, "payments for the use or occupancy of entire private residences or living units in duplex or multiple-housing units are generally rentals from real estate," but "payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment

houses furnishing hotel services * * * do not constitute rentals from real estate," within the meaning of section 211 (a) (1).[9]

■ The apparent intent of Congress was that section 211(a) (1) should be applied to exclude only payments for use of space, and, by implication, such services as are required to maintain the space in condition for occupancy. If the owner performs additional services of such substantial nature that compensation for them can be said to constitute a material part of the payment made by the tenant, the "rent" received then consists in part of income attributable to the performance of labor which is not incidental to the realization of return from passive investment. In such circumstances, the entire payment is to be included in computing the recipient's "net earnings from self-employment."[10]

8. Sec. 211(a) of the Act, 42 U.S.C.A. § 411(a) (1964) provides in part:
   "The term 'net earnings from self-employment' means the gross income, as computed under [the Internal Revenue Code of 1954], derived by an individual from any trade or business carried on by such individual, less the deductions allowed under [the Internal Revenue Code of 1954] which are attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, as computed under [the Internal Revenue Code of 1954], from any trade or business carried on by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary net income or loss—(1) There shall be excluded rentals from real estate and from personal property leased with the real estate * * *, together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer * * *."

9. S.Rep. No. 1669, 81st Cong., 2d Sess. (1950) (1950 U.S.Code Cong.Serv. p. 3454). The comment in full reads:
   "Payments for the use or occupancy of entire private residences or living units in duplex or multiple-housing units are generally rentals from real

estate. Except in the case of real-estate dealers, such payments are excluded under paragraph (1), even though in part attributable to personal property furnished under the lease. On the other hand, payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist camps or tourist homes, or for the use or occupancy of space in parking lots, warehouses, or storage garages do not constitute rentals from real estate."

10. Congress realized that the income of self-employed persons is in most instances a combination of income from both labor and invested capital, and deliberately chose not to attempt the difficult, if not impossible, task of separating one from the other. Congress recognized that no substantial distortion would result, since in any event § 211(b) (1) of the Act (42 U.S.C.A. § 411(b) (1)) imposed a ceiling of from $3,600 to $4,800 on the total annual net earnings from self-employment which may be included in determining eligibility for benefits. Hearings on H.R. 2893 (Social Security) Before the House Committee on Ways and Means, 81st Cong., 1st Sess. 1362–65 (1949). See also Hearings Before the Subcommittee on the Analysis of the Social Security System of the House

The agency has adopted regulations purporting to implement Congress's intention.[11]

After the initial administrative rejection of appellant's claim on the ground that the income which he received was rental income, appellant requested a hearing, stating that he had furnished tenants a variety of services other than those required for the protection and maintenance of the property, including supplying linens and towels, cleaning apartments, emptying wastebaskets, providing laundry service, and cleaning and servicing the swimming pool.[12] At the hearing, appellant supplemented this written submission by testimony that nineteen of the thirty available units were rented as furnished apartments, that he entered all apartments using his own key in accordance with a provision in the leases, that waste was collected from baskets in two thirds of the apartments, that windows of all apartments were washed monthly, and that kitchens were washed down and stoves cleaned in all apartments at two-month intervals. He testified that he also devoted substantial time to the maintenance and operation of the swimming pool and its associated filtering and chlor-

Committee on Ways and Means, 83d Cong., 1st Sess., at 459, 504–07 (1953).

11. Sec. 404.1052(a) (2), (3), and (4) of the Social Security Administration Regulations, 20 C.F.R. § 404.1052(a) (2), (3), and (4) provide:

"(2) Payments for the use or occupancy of entire private residences or living quarters in duplex or multiple-housing units are generally rentals from real estate. Except in the case of real estate dealers, such payments are excluded in determining net earnings from self-employment even though such payments are in part attributable to personal property furnished under the lease.

(3) Payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel service, or in tourist camps or tourist homes, or for the use or occupancy of space in parking lots, warehouses, or storage garages, do not constitute rentals from real estate; consequently, such payments are included in determining net earnings from self-employment. Generally, services are considered rendered to the occupant if they are primarily for his conveniences and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such service, whereas, the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, and so forth, are not considered as services rendered to the occupant.

(4) Except in the case of a real estate dealer, where an individual or a partnership is engaged in a trade or business the income of which is classifiable in part as rentals from real estate, only that portion of such income which is not classifiable as rentals from real estate, and the expenses attributable to such portion, will be included in determining net earnings from self-employment.

*Example.* A, an individual, owns a building containing four apartments. During the taxable year, he receives $1,400 from apartments numbered 1 and 2, which are rented without services rendered to the occupants, and $3,600 from apartments numbered 3 and 4, which are rented with services rendered to the occupants. His fixed expenses for the four apartments aggregate $1,200 during the taxable year. In addition, he has $500 of expenses attributable to the services rendered to the occupants of apartments 3 and 4. In determining his net earnings from self-employment, A includes the $3,600 received from apartments 3 and 4, and the expenses of $1,100 attributable thereto. The rentals and expense attributable to apartments 1 and 2 are excluded. Therefore, A has $2,500 of net earnings from self-employment for the taxable year."

12. "* * * I furnished personal services to tenants on request: furnishing linen & towels, mopping & sweeping floors, dusting & cleaning the apartments, cleaning out tenants' sewers once a week, cleaning bathroom fixtures, emptying wastebaskets, and providing laundry service. I also myself every day scrubbed the sides of the swimming pool, cleaned its filters, & added chlorine & water * * *."

inating equipment. The hearing examiner found "that the extensive services rendered by claimant" came within the "services to occupant" exception to the exclusion of rental income.

The Appeals Council purported to accept the hearing examiner's findings of fact, but nonetheless concluded that the payments which appellant received fell within the rental income exclusion. We think the Council's conclusion may have been induced by the application of erroneous standards.

■ The record indicates that the Appeals Council applied the "services to occupant" exception narrowly, and included borderline items in the rental exclusion. The general statutory preference for coverage would seem to require the opposite approach. Moreover, there is specific evidence that Congress intended the rental exclusion to be narrowly restricted to payments for occupancy only.[13] These considerations, as well as the general purposes of the Act, dictate that any service not clearly required to maintain the property in condition for occupancy be considered work performed for the tenant, and not for the conservation of invested capital.[14]

The administrative agency must determine anew in light of the proper standard whether substantial services not necessary to the maintenance of the property were performed. We therefore do not attempt to evaluate all of the many and varied services which appellant offered. We do suggest, however, that the considerable daily labor required to keep the swimming pool in operating condition was not necessary to the maintenance of the rented space in condition for occupancy; and that the same may well be true of the time expended in servicing the washers, dryers, and other facilities in the laundry.[15] To comport with the statutory purpose, the language of the regulation requiring that services be "other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only"[16] must be read with emphasis upon the closing phrase, "for occupancy only." Otherwise, the continuing expansion of the services which are commonly offered by operators of modern apartment developments would result in a concurrent expansion of the rental exception and reduction in labor income qualifying for coverage.

■ It may also be well to point out that services are not automatically within the exclusion simply because they may be classifiable in the general category of

13. For example, during hearings before a Subcommittee of the House Ways and Means Committee, 83d Cong., 1st Sess. (1953), concerned with an Analysis of the Social Security System (supra note 10), § 211(a) (1) was described as an exclusion of "pure rental income" (supra note 10 at 504) and Robert M. Ball, Acting Director, Bureau of Old Age and Survivors Insurance, testified that "the attempt was to rule out a few types of income which by and large were investment income entirely." Supra note 10 at 505.

14. It is important to note that the exclusion of payments for labor performed in the maintenance of investment property does not reflect an affirmative, competing legislative purpose to be weighed equally with the purposes for which the Act was in fact enacted. If the owner does not hire another to perform such labor, he must do it himself; if he does it himself, the portion of his income

which is attributable to it will be interrupted by old age, disability, or death. This is the very risk against which the Act was designed to afford protection. Supra note 1 and related text. However, because Congress "did not think that it would be advisable to consider all income from all rentals," a line had to be drawn, and exclusion of compensation for some personal labor was simply the unavoidable practical consequence of the line that was drawn. Analysis of the Social Security System, supra note 10 at 505.

15. It also appears that the Appeals Council may have misread the entry of time spent "disposing of refuse into cans" as referring to collection of trash from hallways, etc. The transcript indicates that the reference is to the emptying of wastebaskets removed from individual apartments.

16. Sec. 404.1052(a) (3), supra note 11.

"maintenance and repair." The essential question remains whether the maintenance and repair is of the kind necessary to protect the property investment and maintain the space in condition for occupancy. Similarly, it is not determinative that the services were performed for the tenants as a group rather than for each tenant individually.

■ We think the Council erred in another respect. Having determined that appellant had expended substantial effort upon activities which the Council regarded as involving maintenance of the property in condition for occupancy, the Council accorded little independent consideration to evidence indicating that appellant had also devoted substantial time to furnishing other types of service. Evidence that appellant devoted a great deal of time to the former did not establish, as the Council assumed, that he devoted little time to the latter. There was affirmative evidence that he did in fact devote much time to other services, as we have pointed out. Appellant may have exaggerated the time which he devoted to all of his work, but there was nothing to indicate that his tendency to puff applied more to one category of service than to the other. If appellant did perform substantial additional services, it would be irrelevant that an even greater amount of time was devoted to services designed to protect the property.

■ The Council also erred in holding that non-excluded services were gratuitously performed because the leases did not obligate the owners to perform them. Appellant had no intention of conferring a gratuity. The services were rendered as a part of appellant's total effort to satisfy his tenants and thus assure the profitable operation of the business. They were a portion of the total package of rights and services which was extended to the tenants and for which the tenants were willing to pay, and the record indicates that their availability played a part in maintaining full occupancy of the apartments. It was no doubt irrelevant to the tenants that they may have had no legal right to compel the performance of these services, and we think it equally irrelevant to the application of section 211(a) (1).

■ Finally, the Appeals Council gave no separate consideration to the payments received from the tenants of the nineteen furnished apartments, although the record indicated that more nonexcluded services were offered to these tenants than to the others. The regulations provide, properly we think, that if the payments received from any of the tenants qualified for exception from the exclusion of rental income, these payments were to be included in determining net earnings from self-employment, even if payments from other tenants might not qualify.[17]

The judgment of the district court is vacated, with directions to remand to the Secretary for such further proceedings as he may consider appropriate in the light of this opinion.[18]

17. Supra note 11. But see Conklin v. Celebrezze (319 F.2d 569, 571 (7th Cir. 1963).

18. Stark v. Flemming, 283 F.2d 410, 411 (9th Cir. 1960); Flemming v. Lindgren, 275 F.2d 596, 598 (9th Cir. 1960).