28

Minna R. SCHREIBER, Personal Representative of the Estate of Frank G. Schreiber *

v.

F. David MATHEWS, Secretary, Department of Health, Education & Welfare.

Civ. No. K–76–54.

United States District Court, D. Maryland.

Sept. 15, 1977.

Frank G. Schreiber, pro se.

Jervis S. Finney, U. S. Atty., and John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiff, born in 1908 and a Baltimore City policeman for about fourteen years (Tr. 8, 19, 20), proceeding pro se as he did during the administrative hearing,[1] seeks

---

\* Mr. Schreiber died on June 22, 1977. Mrs. Minna R. Schreiber, Personal Representative of Mr. Schreiber's estate, is substituted herein as party plaintiff under Federal Civil Rule 25. Counsel for the estate has submitted this case for decision on the record. For purposes of convenience, Mr. Schreiber is referred to as "plaintiff" though technically the Personal Representative of the estate is now the party plaintiff.

1. Plaintiff did have an attorney on September 17, 1975 when he sought review by the Appeals Council (Tr. 5). Although at one time there was an indication that plaintiff desired counsel, no counsel has entered his appearance in this case in this Court. After a careful review of the administrative record, this Court believes that the issues in this case have been fully developed and has determined not to consider further the appointment of counsel for plaintiff.

review and reversal of, or remand with regard to, administrative denial to him of retirement, disability and health insurance benefits under the Social Security program.[2] Plaintiff, from time to time, even apparently while he was a policeman, was involved "in real estate operation". In 1968, he became a licensed real estate broker (Tr. 23–24); however, he never provided brokerage or similar services for others. Rather, he bought and sold and rehabilitated properties for his own account (Tr. 24, 25, 31) and received income from the rental of properties. He also during certain years operated a bar known as "Rossiter's Bar" (Tr. 8, 9, 26–27).

 Plaintiff is not entitled to any of the benefits he seeks herein unless he has accumulated a sufficient number of quarters of coverage. It is seemingly uncontroverted—and indeed the record would not seem to provide any meritorious basis upon which plaintiff can contest—that plaintiff under the applicable statutes and regulations needs 22 quarters of coverage to be entitled to retirement insurance benefits; 20 quarters of coverage (out of the 40 quarters which end with the quarter which marked the onset of his alleged disability) to be entitled to disability benefits; and 18 quarters of coverage to be entitled to health benefits. The record contains substantial evidence supporting the administrative determination that plaintiff has not accumulated the necessary coverage so as to entitle him to any of the benefits under consideration herein.

Plaintiff had earnings during four quarters of coverage in each of 1956, 1958, 1962 and 1963. Thus, plaintiff has to his credit 16 quarters of coverage growing out of his work during those years. In 1971, plaintiff declared earnings of $1001.00 on his federal income tax return for that year; however, the IRS determined on February 28, 1973 and again in April 1973 that plaintiff had no income for the year 1971 (Tr. 9, 29). Plaintiff himself testified that originally his 1971 income tax return contained an "error" (Tr. 29). In 1973, plaintiff filed tax returns for the years 1966, 1967, 1968 and 1971 (Tr. 28–29). Those filed for 1966, 1967 and 1968 were not filed, however, within the maximum three year, three months and fifteen day time period applicable for purposes of obtaining credit towards Social Security coverage growing out of work during those years. *See Martlew v. Celebrezze*, 320 F.2d 887, 888–90 (5th Cir. 1963), interpreting 42 U.S.C. § 405. The 1971 return was filed within that three year plus period, but as related *supra*, plaintiff had no income during 1971.

42 U.S.C. § 405(c)(3) and (4) provides:

(3) The Secretary's records shall be evidence for the purpose of proceedings before the Secretary or any court of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived. The absence of an entry in such records as to wages alleged to have been paid to, or as to self-employment income alleged to have been derived by, an individual in any period shall be evidence that no such alleged wages were paid to, or that no such alleged income was derived by, such individual during such period.

(4) Prior to the expiration of the time limitation following any year the Secretary may, if it is brought to his attention that any entry of wages or self-employment income in his records for such year

---

The issue of disability, based on plaintiff's claim of a "heart condition" (Tr. 32, 49–52, 63–66) was not determined at the administrative level and need not be determined herein in view of the absence of coverage, which, even assuming arguendo only the existence of disability (*see* note 2 *infra*), precludes the relief plaintiff seeks herein. Plaintiff's retirement from the Baltimore City Police Department was not connected with any physical disability (Tr. 22–23).

2. As to hospital benefits, plaintiff was at one point awarded health insurance benefits on the mistaken assumption that he had income in 1971 which gave him 18 quarters of coverage. The IRS's determination that plaintiff did not have earned income in 1971, a determination supported by substantial evidence in the record, reduced plaintiff's coverage to less than 18 quarters (Tr. 10).

is erroneous or that any item of wages or self-employment income for such year has been omitted from such records, correct such entry or include such omitted item in his records, as the case may be. After the expiration of the time limitation following any year—

(A) the Secretary's records (with changes, if any, made pursuant to paragraph (5) of this subsection) of the amounts of wages paid to, and self-employment income derived by, an individual during any period in such year shall be conclusive for the purposes of this subchapter;

(B) the absence of an entry in the Secretary's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence for the purposes of this subchapter that no such alleged wages were paid to such individual in such period; and

(C) the absence of an entry in the Secretary's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Secretary shall include in his records the self-employment income of such individual for such year.

42 U.S.C. § 405(c)(1)(B) provides:

(B) The term "time limitation" means a period of three years, three months, and fifteen days.

42 U.S.C. § 405(c)(5)(A) provides:

(5) After the expiration of the time limitation following any year in which wages were paid or alleged to have been paid to, or self-employment income was

derived or alleged to have been derived by, an individual, the Secretary may change or delete any entry with respect to wages or self-employment income in his records of such year for such individual or include in his records of such year for such individual any omitted item of wages or self-employment income but only—

(A) if an application for monthly benefits or for a lump-sum death payment was filed within the time limitation following such year; except that no such change, deletion, or inclusion may be made pursuant to this subparagraph after a final decision upon the application for monthly benefits or lump-sum death payment; * * *.

▉▉▉ Plaintiff filed applications for retirement insurance benefits in April 1972, May 1973 and November 1973, for disability insurance benefits in May 1973 and November 1973, and for health benefits in May 1974 (Tr. 10). Plaintiff contended during the administrative hearing that he filed an application for benefits on November 25, 1969 (Tr. 45)[3]. However, the record supports the Administrative Law Judge's finding (Tr. 9) that that request by plaintiff was for a statement of earnings only and did not constitute an application for benefits (Tr. 28, 41, 44–45). There must "at least be a revelation of the claimant's identity together with an expression of his intention to claim benefits" to constitute an effective oral application for benefits. *Medalia v. Folsom*, 135 F.Supp. 19, 21 (D.Mass. 1955). *See also McNally v. Flemming*, 183 F.Supp. 309, 312–13 (D.N.J.1960). Herein, the record contains substantial evidence supporting the Administrative Law Judge's determination of the absence of facts establishing the second part of the formula.

▉▉ Even if plaintiff did timely file for benefits, which seemingly he did not, there are additional reasons why plaintiff may not succeed upon this appeal. Plaintiff's 1966, 1967, 1968 and 1971 tax returns refer

---

**3.** But see plaintiff's written May 24, 1973 statement: "I cannot remember if I ever filed for Social Security benefits before. I know that I inquired last year but I don't know if I signed any papers." (Tr. 104).

to self-employment income. The 1966 return specifies income from the operation of Rossiter's Bar which plaintiff operated from 1961–68. Plaintiff's own testimony discloses that he operated that bar at a loss during those years (Tr. 9, 26–27). The Administrative Law Judge's finding that plaintiff's *claimed* income for the years 1967 and 1968 related to the operation of that bar and did not relate to other sources such as the rental properties is supported by substantial evidence in the record. But in any event, as the Administrative Law Judge concluded, any income from those rental properties as well as from Rossiter's Bar was investment income and not income from self-employment. In defining net earnings from self-employment, 42 U.S.C. § 411(a)(1) provides:

> (1) There shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares), together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; * * *.

"Trade or business" is defined in 42 U.S.C. § 411(c). However, the text thereof throws little light on the question of when rental income is or is not "self-employment" income. In *Deputy v. duPont*, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940), Mr. Justice Frankfurter, in a concurring opinion in an income tax case, wrote (at 499, 60 S.Ct. at 369) that " 'carrying on any trade or business' ", within the meaning of the Internal Revenue Code "involves holding one's self out to others as engaged in the selling of goods or services." More specifically related to the rental issue is *Delno v. Celebrezze*, 347 F.2d 159 (9th Cir. 1965), in which Judge Browning, in the course of considering, *inter alia*, 42 U.S.C. § 411(a)(1), wrote (at 161):

> The general purpose of the old-age, survivor and disability insurance provisions of Title II of the Social Security Act is to protect workers and their dependents from the risk of loss of income due to the insured's old age, death, or disability. Accordingly, entitlement to benefits is based upon the receipt of income from labor, which old age, death, or disability would interrupt; and not upon the receipt of income from the investment of capital, which these events would presumably not affect. The ultimate problem in this case is to determine whether the statutory provisions and interpretive regulations which have been drawn with this general distinction in mind require that the payments which appellant received be treated as investment income rather than income from labor. [Footnotes omitted.]

Judge Browning, referring to applicable legislative history, further wrote (at 163):

> The Committee reports accompanying the bill which included section 211(a)(1) of the Act make it clear that not all payments which might be considered "rent" in ordinary parlance are to be excluded from self-employment net income. Thus, "payments for the use or occupancy of entire private residences or living units in duplex or multiple-housing units are generally rentals from real estate," but "payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services * * * do not constitute rentals from real estate," within the meaning of section 211(a)(1).

> The apparent intent of Congress was that section 211(a)(1) should be applied to exclude only payments for use of space, and, by implication, such services as are required to maintain the space in condition for occupancy. If the owner performs additional services of such substantial nature that compensation for them can be said to constitute a material part of the payment made by the tenant, the "rent" received then consists in part of income attributable to the performance of labor which is not incidental to the realization of return from passive investment. In such circumstances, the entire payment is to be included in computing

the recipient's "net earnings from self-employment." [Footnote omitted.]

While plaintiff was a licensed real estate broker, he did not buy or sell real estate for others. Rather, he simply purchased and maintained properties for himself (Tr. 8, 24). Nor did plaintiff perform specific additional services for his tenants. Testifying with regard to how he operated his properties, plaintiff stated (Tr. 39): "Real estate investment is almost like owning stocks and bonds. * * * A person can do this sort of thing from—well, from a bed. I mean, there's no effort involved, outside of a telephone, you know, in case of emergency or something would happen." Plaintiff collected rent by mail (Tr. 37) and contracted out plumbing, roofing and minor repair work (Tr. 37). Plaintiff also "subcontracted all the work out to convert" one property. Seemingly, although he had a plumbing license, had worked in the past as an electrician's helper (Tr. 34–35), and liked to "fool around" with repair of equipment and tools (Tr. 37–38), plaintiff himself did no work in connection with rehabilitation of properties he bought.

While plaintiff's lay use of words of art is certainly not determinative, plaintiff himself wrote in November 1973 (Tr. 78) that he "was last self-employed in 1968." (Tr. 81). When one completes the tour of thickets in this case, the administrative decision as to lack of coverage traceable to earnings from employment appears amply supported by substantial evidence and in accord with applicable law. Accordingly, the Secretary is entitled to affirmance herein.