SELWYN P. RAMSAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ramsay v. Commissioner
Docket No. 1934-80.
United States Tax Court
T.C. Memo 1983-590; 1983 Tax Ct. Memo LEXIS 186; 46 T.C.M. (CCH) 1497; T.C.M. (RIA) 83590; September 26, 1983. Selwyn P. Ramsay, pro se. Edgar G. Rios, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent has determined a deficiency of $135.17 in petitioner's 1976 Federal income tax. The sole issue for determination *187 is whether petitioner properly included gross rentals and property taxes from certain real estate he owned in computing his "net earnings from self-employment" under section 1402. [1]
FINDINGS OF FACT Most of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner maintained his residence and principal place of business in Anaheim, California, at the time he filed his petition in this case. Petitioner timely filed his individual Federal income tax return for 1976. Since 1959 and through the present time, petitioner has been doing business as Ramsay Engineering Company, a sole proprietorship. Ramsay Engineering Company is a consulting engineering firm and a manufacturer of electronic instrumentation. During 1976, Ramsay Engineering Company manufactured oceanographic research instruments. Prior to and during 1966, petitioner investigated various real estate properties, contemplating the purchase of some five *188 acres of land on which to construct an office and industrial building for his engineering business. Late in 1966, petitioner purchased for approximately $131,000 ten acres of land located on La Jolla Street in Anaheim, California ("the La Jolla property"). The only improvement on the La Jolla property when petitioner purchased it was a small one-bedroom farmhouse of approximately 800 square feet. From 1966 through and including 1976, petitioner rented the farmhouse situated on the La Jolla property to two different families. During 1976, petitioner collected $1,480 in rents from the rental of the farmhouse. Petitioner also tried to rent out some of the raw land to farmers and had done so as early as 1970 when he rented some 8.5 acres of the La Jolla property. During 1976, petitioner rented to an independent farmer approximately 5.5 acres of the La Jolla property, for which petitioner collected a yearly rental of $2,500. At no time did petitioner intend to hold and use the La Jolla property solely as rental property, and it would have been unprofitable for him to do so. At the time petitioner purchased the La Jolla property, he intended to sell half of the land and build *189 the new facility for his business on the remaining five acres. Petitioner was not able to sell all five acres at one time, so he divided the 10 acres into parcels of land to accommodate buyers of smaller-size portions. Before 1976, petitioner sold approximately 2.5 acres of the La Jolla property for approximately $66,000. During 1976, petitioner sold another 1.1 acres of the La Jolla property for approximately $42,300. Since the end of 1976 and sometime after July of 1979, petitioner sold approximately two additional acres of the La Jolla property, including the farmhouse, for approximately $230,000. Petitioner still owns approximately four acres of the La Jolla property in two parcels. These parcels are not contiguous and the smaller of the two parcels is approximately 7/10 of an acre. Between 1966 and the end of 1976, because of general economic conditions and petitioner's own business and family situation, petitioner was not able to begin construction of his intended building on the La Jolla property. In August of 1979, petitioner obtained from a building designer a sketch or preliminary design of a proposed building he intended to construct on the La Jolla property he *190 still owned. The plan called for the building to be built upon the smaller remaining parcel (7/10 acre). As of the time of trial, petitioner, for various business and personal reasons, had not been able to construct his intended building on any portion of the La Jolla property. Petitioner was not a real estate dealer during any part of the taxable year 1976, nor has he ever been a dealer in real estate. From September of 1977 through July of 1979, petitioner lived in the small farmhouse located on the La Jolla property. Throughout the period from 1966 through the present, petitioner has always reported the income and expenses of the La Jolla property on the books and records of his engineering business. Petitioner owns five other pieces of real estate, and the La Jolla property is the only real estate that he has treated as part of his trade or business on the books and records of Ramsay Engineering Company. During 1976 petitioner paid real property taxes on the La Jolla property in the amount of $8,587.90, some of which was apparently for earlier years and related to portions of the La Jolla property that had been sold. Petitioner reported these taxes on line 7 of Schedule *191 C "Profit or (Loss) from Business or Profession" of his 1976 tax return. On line 4 of this Schedule C for the Ramsay Engineering Company, petitioner reported the $3,980 of rental income he received from the La Jolla property as "Other income; Rents Earned." On line 21 of the Schedule C, petitioner reported a "net loss" of $2,897. On line 5a of Schedule SE "Computation of Social Security Self-Employment Tax" of petitioner's 1976 tax return, petitioner also reported this loss of $2,897. In his statutory notice, respondent excluded both the property taxes on and gross rental income from the La Jolla property from petitioner's Schedule C and from his Schedule SE, resulting in a deficiency for self-employment taxes. OPINION Section 1401 imposes a tax upon an individual's "self-employment income." [2] Generally, section 1402(b) defines self-employment income as the "net earnings from self-employment" derived by an individual during a taxable year. [3] Section 1402(a), as in effect during 1976, provided as follows: (a) Net Earnings From Self-Employment.--The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried *192 on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business * * * except that in computing such gross income and deductions and such distributive share of partnership ordinary income or loss-- (1) there shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares) together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; * * * The above statutory language, the legislative history, and the pertinent regulations all show that rentals and the deductions attributable thereto are excluded from net earnings from self-employment. "If the individual is not in a trade or business as a real estate dealer, all rentals from real estate, and deductions attributable thereto, are excluded in computing his net earnings from self-employment." H. Rept. No. 1300, 81st Cong., 1st Sess. (1950), 1950-2 C.B. 255, 294; S. Rept. No. 1669, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 302, 354. See also section 1.1402(a)-4(a), Income Tax Regs. Petitioner admittedly *193 was not in a trade or business as a real estate dealer. *194 The Social Security Act Amendments of 1950 extended the benefits and the burdens of the social security program to self-employed individuals. Pub. L. 734, 64 Stat. 477 (1950). The concept of "net earnings from self-employment" determines not only liability for self-employment taxes but also eligibility for social security benefits. 42 U.S.C. secs. 403(b), 411(a), and 411(b). The statute and regulations pertaining to eligibility for social security benefits for self-employed persons have provisions defining net earnings from self-employment substantially identical to section 1402(a) and the regulations thereunder. See 42 U.S.C. sec. 411(a)(1); 20 C.F.R. sec. 404.1053(a) (1976), now found at 20 C.F.R. sec. 404.1082(a) (1983). We thus construe section 1402(a) in parimateria with 42 U.S.C. sec. 411(a) to maintain the "symmetrical parallel between the social security eligibility provisions for self-employed persons and the corresponding income tax provisions for taxing self-employed persons for social security purposes." Johnson v. Commissioner,60 T.C. 829, 833 (1973). *195 See also Estate of Ellsasser v. Commissioner,61 T.C. 241, 247 (1973). We also recognize that these provisions are broadly construed to favor coverage for social security purposes, Rasmussen v. Gardner,374 F. 2d 589, 594-595 (10th Cir. 1967); Delno v. Celebrezze,347 F. 2d 159, 162 and cases cited in n. 7 (9th Cir. 1965), and thus to favor treatment of income as earnings from self-employment. Estate of Ellsasser v. Commissioner,supra;Johnson v. Commissioner,supra.This means, as these cases show, that the rental exclusion of section 1402(a)(1) is narrowly construed for purposes of both coverage and tax liability. Nonetheless, entitlement to benefits and the incidence of the self-employment tax are "based upon the receipt of income from labor, which old age, death, or disability would interrupt; and not upon the receipt of income from the investment of capital, which these events would presumably not affect." Delno v. Celebrezze,supra,347 F. 2d at 161. Here, the rentals from the La Jolla property result not from petitioner's personal labor, but from his ownership *196 of the land. That petitioner may have initially purchased some portion of the land for use in his engineering business is simply irrelevant. There is no room to construe section 1402(a)(1) to permit inclusion of petitioner's rentals from the La Jolla property as earnings from self-employment. The meaning of the statute is plain. Since petitioner was not a real estate dealer, his rentals from the La Jolla property must be excluded in determining his net income from self-employment. Both respondent and petitioner have taken an all or nothing position, with petitioner claiming that all income and the full amount of real property taxes from the La Jolla property were properly included on the Schedules C and SE and respondent claiming just the opposite. However, it may not necessarily follow that because the gross rentals from the La Jolla property are excluded from net earnings from self-employment, all of the property taxes on the La Jolla property must automatically be excluded from petitioner's Schedules C and SE. "Net earnings from self-employment" mean the gross income petitioner derived from his trade or business less the deductions attributable to that trade or business. *197 Section 1402(a). And section 1402(a)(1) excludes from net self-employment earnings only the rentals from real estate and the deductions attributable to such rentals. Thus, the issue is whether any portion of the taxes on the La Jolla property is attributable to petitioner's engineering business. The fact that petitioner derived some gross rentals from the La Jolla property does not automatically establish that all of the property tax deductions are attributable to the rental activity. In other words, if some particular portion of the land could be found to have been held for use in petitioner's engineering business, it may be that some allocable portion of the real property taxes may be deductible on petitioner's Schedules C and SE. Nonetheless, on the facts of this case, we must conclude that no part of the property taxes is attributable to petitioner's trade or business. In 1966 petitioner wanted to buy five acres of land upon which to construct a building for use in his business. Instead he purchased the La Jolla property, 10 acres, intending to resell the other five acres. Thus, at the outset petitioner purchased at least half of the land for investment purposes rather *198 than for use in his trade or business. Petitioner then had the La Jolla property divided into smaller parcels to facilitate his prospective sales and, by the end of the year in issue (1976), had sold approximately 3.6 acres. However, by the end of 1976, 10 years after purchasing the property, petitioner still had not even begun the planning of a building for use in his engineering business, much less having constructed and put such a building into use in his engineering business. Petitioner testified about various business and personal reasons why he failed to begin construction by 1976, but these explanations do not persuade us that he held the remaining 6.4 acres or any portion thereof for use in his business. Although petitioner never intended to use the La Jolla property as rental property, we believe that by 1976 petitioner had abandoned his original intent to use five acres or any other portion thereof in his trade or business. Instead, we conclude that by 1976 petitioner had decided to hold the land for investment. Petitioner's conduct after the close of 1976 re-enforces our conclusion. Petitioner used the farmhouse on the La Jolla property as his personal residence *199 from September of 1977 through July of 1979. Thereafter, petitioner sold another two acres of the La Jolla property, including the farmhouse, leaving him slightly over four acres. However, the parcels he continues to own are not contiguous. And although in 1979 petitioner obtained a preliminary design for a proposed building, that building would occupy only 7/10 of an acre of the original 10 acres he purchased. As of the trial of this case, petitioner had done no further work or planning for the construction of his building, and indeed acknowledged, both at trial and on brief, that he was not likely to do so in the future. On this record, we cannot say that in 1976 petitioner held even the 7/10 of an acre for use in his engineering business, and even if we could make such a finding, we could not determine the portion of the real estate taxes attributable to that parcel. Since we conclude that petitioner by 1976 had abandoned his plan to use the La Jolla property in his trade or business, we need not address the more troublesome question of whether the carrying costs (real estate taxes) of raw land held for future use in an individual's trade or business may be attributable to *200 that trade or business for purposes of determining his net earnings from self-employment. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question.↩
2. As in effect during 1976, section 1401 provided in pertinent part: (a) Old-Age, Survivors, and Disability Insurance.--In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax equal to 7.0 percent of the amount of the self-employment income for such taxable year. (b) Hospital Insurance.--In addition to the tax imposed by the preceding subsection, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax as follows: (1) in the case of any taxable year beginning after December 31, 1973, and before January 1, 1978, the tax shall be equal to 0.90 percent of the amount of the self-employment income for such taxable year; ↩
3. As in effect during 1976, section 1402(b) provided: (b) Self-Employment Income.--The term "self-employment income" means the net earnings from self-employment derived by an individual (other than a nonresident alien individual) during any taxable year; except that such term shall not include-- * * * (2) the net earnings from self-employment, if such net earnings for the taxable year are less than $400. * * *↩