FABIAN BOBO AND FLORENCE BOBO, PETITIONERS v.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11209–76.    Filed August 17, 1978.

*Richard L. Carico,* for the petitioners.
*Thomas F. Donahue,* for the respondent.

WILES, *Judge:* Respondent determined deficiencies of $864.00 and $1,042.80 in petitioners' 1973 and 1974 Federal income taxes. The sole issue is whether petitioners' net rental income from their mobile home park is subject to self-employment tax under section 1402(a)(1).[1]

## FINDINGS OF FACT

Some facts are stipulated and are found accordingly.

Fabian and Florence Bobo, husband and wife, were legal residents of Novato, Calif., when they timely filed their 1973 and 1974 returns with the Internal Revenue Service Center, Fresno, Calif., and when they filed their petition in this case.

Petitioners own a 46-space mobile home park in Novato, Calif.; 38 spaces are occupied by owners of independent mobile homes and 8 spaces are occupied by tenants of mobile homes owned by petitioners. The mobile home park grounds are paved with concrete and asphalt. No landscaping maintenance is required. Leaves from trees which border the park and other debris are raked and disposed of periodically by the resident manager.

Each mobile home space has a gas, water, sewer, and metered electrical connection. Tenants place their refuse in onpremise containers which are serviced by a local scavenger. An independent concessionaire provides two coin-operated washers and dryers with two washtubs. The machines are located in laundry facilities provided by petitioners who also provide water, electrical, and sewer connections for the machines. The concessionaire owns the machines, has the sole responsibility for their repair and maintenance, and collects the money from them.

---

[1]Statutory references are to the Internal Revenue Code of 1954, as amended.

Petitioners receive a commission from the concessionaire. All these services are required by California law and are consequently provided by other mobile home parks. Petitioners do not provide any recreational facilities, swimming pool, or public telephones to the tenants.

Fabian Bobo is disabled and petitioners receive full Social Security benefits as a result. Florence Bobo occasionally visits the mobile home park but the overall park operation is entrusted to a resident manager. Petitioners' normal management contact is only through arrangement for repairs and maintenance needs brought to their attention by the resident manager.

The resident manager collects rent and leases vacant spaces. Tenants deliver the rent to the manager who turns it over to the bookkeeper. The manager also cleans the laundry facilities, sweeps leaves from the driveways, and cleans petitioners' eight mobile homes when they become vacant and available for rental to new tenants. She performs no service with respect to the eight mobile homes owned and rented by petitioners when they are occupied by tenants. The manager's work requires an average of about 3 hours a week for which she receives $125 a month and a free space for her mobile home.

Forty-five of the park's 46 spaces are rented on a month-to-month basis; one space being used by the resident manager rent free. All tenants sign a rental agreement for a month-to-month tenancy. In 1973 and 1974 the tenancy turnover was as follows: In 19 spaces there was no change; in 8 spaces there was 1 change; in 9 spaces there were 2 changes; in 4 spaces there were 3 changes; in 2 spaces there were 4 changes; in 2 spaces there were 5 changes; and in 1 space there were 7 changes. Five of these changes were the result of tenants moving from one space to another.

Petitioners are not real estate dealers. In 1946, Fabian Bobo acquired the land on which the mobile home park is situated and commenced the mobile home park business thereon in 1952.

In 1973 and 1974, petitioners received and reported the following income and expense from their mobile home park:

|  | 1973 | 1974 |
|---|---|---|
| Rents received | $35,546 | $37,179 |
| Expenses | (18,195) | (18,925) |
| Net rental income | 17,351 | 18,254 |

The rents received include gross laundry concessionaire commissions of $363 and $614 in 1973 and 1974, respectively. Respondent determined that the net rental income constituted "net earnings from self-employment" within the meaning of section 1402(a) and proposed a self-employment tax thereon.

OPINION

We must determine whether petitioners' net earnings from their mobile home park are subject to self-employment tax. Petitioners contend that section 1402(a)(1) and section 1.1402(a)–4, Income Tax Regs., exclude their earnings from the definition of "net earnings from self-employment" as "rentals from real estate and from personal property leased with the real estate." Respondent, relying upon Rev. Rul. 72–331, 1972–2 C.B. 513, argues that petitioners' earnings from the mobile home park are not excludable earnings as "rentals from real estate" since the park renders services to its tenants within the meaning of section 1.1402(a)–4(c)(2), Income Tax Regs. We disagree with respondent.

Section 1401 imposes a tax on the self-employment income of every individual. Section 1402(a) generally defines "net earnings from self-employment," as gross income from trade or business less allowable deductions attributable to such trade or business. Rentals from real estate and from personal property leased with the real estate, and the deductions attributable thereto, are, however, excluded from the computation of net earnings from self-employment unless the rentals are received in the course of a taxpayer's trade or business as a real estate dealer. Sec. 1402(a)(1); sec. 1.1402(a)–4(a), Income Tax Regs. Since petitioners are not real estate dealers, the narrow issue is whether their earnings constituted rentals from real estate and from personal property leased with it.

Where services are provided in connection with the real estate rental, section 1.1402(a)–4(c)(2), Income Tax Regs., indicates that the rental income may be excluded from the self-employment tax base as rentals from real estate only if such services are not considered rendered to the occupant:

Payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist camps, or tourist homes, or payments for the use or

occupancy of space in parking lots, warehouses, or storage garages, do not constitute rentals from real estate; consequently, such payments are included in determining net earnings from self-employment. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such service; *whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, and so forth, are not considered as services rendered to the occupant.* [Emphasis added.]

In *Delno v. Celebrezze,* 347 F.2d 159, 163 (9th Cir. 1965), it was noted that the section:

should be applied to exclude only payments for use of space, and, by implication, such services as are required to maintain the space in condition for occupancy. If the owner performs additional services of such *substantial* nature that compensation for them can be said to constitute a material part of the payment made by the tenant, the "rent" received then consists in part of income attributable to the performance of labor which is not incidental to the realization of return from passive investment. [Emphasis added.][2]

In such cases, the entire tenant payment is included in computing "net earnings from self-employment."

Respondent cites Rev. Rul. 72–331, 1972–2 C.B. 513, in support of his position which holds:

Since the trailer park owner in the instant case cleans and maintains the grounds and maintains city sewerage, electrical connections, laundry, bath, and toilet facilities, the roadway into the trailer park, and facilities for the use of water by the owners of the trailers, he provides services other than those usually or customarily provided in connection with the rental of space only for occupancy.

Respondent therefore argues that the following services provided by petitioners disqualify their mobile home income from the excluded real estate rental payments category: utility hookups, sewage facilities, laundry facilities and the weekly maintenance thereof, and cleaning of vacant trailers. Petitioners contend that since California law requires most of these services, they are "those usually or customarily rendered in connection with the rental of rooms or other space" within the meaning of section

---

[2]This case involved provisions of the Social Security Act and regulations which are substantially identical to the provisions of the Internal Revenue Code and regulations involved herein. In *Johnson v. Commissioner,* 60 T.C. 829, 832 (1973), we noted that Social Security cases are useful in construing parallel provisions of self-employment tax statutes.

1.1402(a)–4(c)(2), Income Tax Regs., and are therefore excluded rental payments. We do not entirely agree with either party.

First, we consider Rev. Rul. 72–331, 1972–2 C.B. 513, to be inconsistent, in part, with the language and intendment of section 1.1402(a)–4(c)(2), Income Tax Regs. Clearly, many of the services relied upon in Rev. Rul. 72–331, *supra*, to disqualify the taxpayer's reliance upon section 1.1402(a)–4(c)(2), Income Tax Regs., in excluding the payments as rentals from real estate are approved in the regulation itself, such as: "the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, and so forth, are not considered as services rendered to the occupant."

Second, merely because California law requires the owners to provide the service does not mean that it will be considered one "usually or customarily rendered" within the meaning of section 1.1402(a)–4(c)(2), Income Tax Regs. As stated in *Delno v. Celebrezze, supra* at 165, that phrase must be read with emphasis upon the closing phrase "for occupancy only." Otherwise all common services would qualify regardless of whether they were required to maintain the space in condition for occupancy.

We believe whether the services should be considered as rendered to the occupant within the meaning of section 1.1402(a)–4(c)(2), Income Tax Regs., raises a question of fact to be resolved, as in *Delno v. Celebrezze, supra,* by determining whether they are required to maintain the space in condition for occupancy and, if not, whether they are substantial. In this regard, the approved services listed in section 1.1402(a)–4(c)(2), Income Tax Regs., are only illustrative as noted by the "and so forth" language of that regulation.

With this in mind we turn to the services respondent contends are rendered to the occupant: utility hookups, sewerage, laundry, and vacant trailer maintenance.

There is no definitive evidence in the record as to what services "utility hookups" entail. Moreover, the record clearly reflects that neither of petitioners nor their resident manager was involved in providing such a service. Accordingly, we cannot consider it as a service provided at all on the basis of this record.

Sewerage, vacant trailer maintenance, and other services such as utilities, trash collection, and grounds maintenance are clearly services required to maintain the space for condition of

occupancy within the meaning of section 1.1402(a)–4(c)(2), Income Tax Regs.

The only service which presents an issue on this record is providing laundry facilities and weekly maintenance thereof. A concessionaire supplies and services the laundry facility machines giving petitioners, who maintain the area, a commission. We believe the fact that petitioners operate through a concessionaire to be irrelevant.

Although we believe the laundry service is clearly rendered for the convenience of the tenant and not to maintain the property in condition for occupancy, we do not think that this service is substantial enough to classify all the tenants' payments as received for "services to the occupants" within the meaning of section 1.1402(a)–4(c)(2), Income Tax Regs. *Delno v. Celebrezze, supra* at 163, noted that the prescribed services must be of "such substantial nature that compensation for them can be said to constitute a material part of the payment made by the tenant." Clearly, tenants paid for space and the services necessary to maintain that space for occupancy. We have already elaborated with respect to them. On the basis of the record before us, it is impossible to conclude that the laundry service was so substantial that a material part of the tenant payments was for it. The service was not separately stated, billed, and paid for. We view it merely as an incidental and minor service to the occupant who pays rent primarily for his space and the services necessary to maintain it.

Accordingly, we find that no part of the payments by petitioners' mobile home tenants is for services rendered to the occupant. Thus, petitioners' net rental income from their mobile home park in 1973 and 1974 is excluded from "net earnings from self-employment" as rentals from real estate and from personal property leased thereon. [3]

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[3]Petitioners concede in their opening brief that the 1973 and 1974 gross laundry commissions of $363 and $614, respectively, are subject to self-employment tax. Unfortunately there is not sufficient evidence in the record to determine how much, if any, of the gross commissions would constitute "net earnings from self-employment" after allowance for appropriate expenses and the minimum earnings floor of sec. 1402(b)(2). The parties should resolve this matter between themselves without further testimony under Rule 155, Tax Court Rules of Practice and Procedure.