ROGER G. HOPPER AND HELEN H. HOPPER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 22123-87.       Filed March 27, 1990.

Roger G. Hopper, pro se.
*John C. McDougal,* for the respondent.

RUWE, *Judge:* Respondent determined a deficiency of $2,964.54 in petitioner Roger G. Hopper's 1982 self-employment tax. The sole issue is whether in determining his net earnings from self-employment, Mr. Hopper may offset his share of a loss from a partnership that rented self-storage facilities against self-employment income from his law practice.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners are husband and wife who resided in Richmond, Virginia, at the time they filed the petition.

Mr. Hopper is a practicing attorney. He is also one of four general partners in Sentry Associates (Sentry), which was in the business of renting self-storage facilities, also known as the mini-storage business. Sentry had two locations. Sentry's Whitestone location was purchased in 1981. After a 1982 addition, it had approximately 200 self-storage units which were available for rental. The size of the individual units was either 10 feet by 30 feet or 8 feet by 5 feet. Sentry's Williamsburg location, completed in May 1982, had approximately 700 self-storage units, plus a vault with lock boxes. Fifty of the 700 units were lockers that were primarily leased to students at the College of William and Mary.

Each of Sentry's locations consists of a fenced area enclosing the storage units, asphalt driveways, and quarters for the managers, usually a husband and wife, who live on the site. The storage units at each of Sentry's locations were rented on a month-to-month basis pursuant to a written contract. Rent on Sentry's storage units was due on the 1st day of each month, with late charges imposed if the rent was received later than the 6th day of the month. The rental of Sentry's units was governed by the Self-Service Storage Act of Virginia. See Va. Code Ann. secs. 55.416-55.423 (1986).

Services provided by Sentry consisted of a soft drink machine, pest control, contents insurance, and the sale of locks, packaging materials (including boxes), and pallets. A

brochure on contents insurance was available to Sentry's lessees in the office at each location. Lessees were also provided with information on how to pack and store their belongings and how to determine the size of the storage unit which they needed. Lessees were responsible for cleaning the units when they vacated them. Lessees did not always leave the units clean; therefore, Sentry frequently had to sweep out the units when a lessee departed.

Mr. Hopper was directly involved with starting up Sentry's business, hiring contractors, preparing advertising materials, distributing brochures, and drafting an operations manual for all employees. He received and deposited Sentry's receipts on a daily basis, kept the books and records, and prepared the payroll tax returns. He participated directly in door-to-door solicitation of businesses for customers, and the management and supervision of Sentry's employees (the facility managers). At times, he also personally substituted for the facility managers, performed general maintenance repairs, and performed other work at the facilities.

All of the income received by Sentry in 1982, was reported as "gross rents." No guaranteed payments to partners were paid by Sentry. Neither Mr. Hopper nor Sentry was a dealer in real estate.

For the taxable year 1982, Sentry reported gross rents of $47,404.06 and rental expenses of $247,533 resulting in a reported partnership loss of $200,128.94. Mr. Hopper's share of the partnership loss was $50,032.23.

On their individual income tax return for 1982, petitioners reported that Mr. Hopper had a net profit from his law practice in the amount of $50,725.90. On Schedule SE attached to their 1982 return, petitioners reported Mr. Hopper's profit from his law practice as self-employment income and then subtracted Mr. Hopper's share of Sentry's loss to arrive at a reported net earnings from self-employment in the amount of $693.67 and a reported self-employment tax of $64.86.

OPINION

Section 1.1402(a)-2(c), Income Tax Regs., allows an individual who is involved in more than one trade or business,

to aggregate income and losses in determining net earnings from self-employment. Respondent does not question that the Sentry partnership was operating a trade or business. The issue we must decide is whether it is proper to offset Mr. Hopper's share of Sentry's loss against self-employment income from his law practice in determining his net earnings from self-employment which is subject to self-employment tax.

Respondent contends that section 1402(a)(1)[1] and section 1.1402(a)-4, Income Tax Regs., exclude losses from real estate rentals from being used as an offset in arriving at net earnings from self-employment. Petitioners argue that Mr. Hopper's share of Sentry's loss is not to be excluded from the determination of Mr. Hopper's net self-employment income because Sentry renders services to its tenants within the meaning of section 1.1402(a)-4(c)(2), Income Tax Regs. We will begin our analysis by describing the controlling statute and regulations.

Section 1401 imposes a tax on self-employment income. Section 1402(a) generally defines "net earnings from self-employment," as gross income from a trade or business less allowable deductions attributable to such trade or business. However, rentals from real estate and the deductions attributable thereto are excluded from the computation of net earnings from self-employment unless the rentals are received in the course of a taxpayer's trade or business as a real estate dealer. Sec. 1402(a)(1); sec. 1.1402(a)-4(a), Income Tax Regs. Neither Sentry nor Mr. Hopper was a real estate dealer. We must therefore decide whether Sentry's earnings constituted "rentals from real estate" and whether its deductions are related to such "rentals" within the meaning of section 1402(a)(1) and the regulations thereunder.

Section 1.1402(a)-4(c)(2), Income Tax Regs., indicates that where services are provided in connection with a real estate rental, the rental income and deductions may be excluded from the self-employment tax base:

Payments for the use or occupancy of rooms or other space *where services are also rendered to the occupant*, such as for the use or

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist camps, or tourist homes, or payments for the use or occupancy of space in parking lots, warehouses, or storage garages, do not constitute rentals from real estate; consequently, such payments are included in determining net earnings from self-employment. *Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such service; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, and so forth, are not considered as services rendered to the occupant.* [Emphasis added.]

In *Delno v. Celebrezze*, 347 F.2d 159, 163 (9th Cir. 1965), which dealt with the analogous provisions of the Social Security Act, it was held that the exclusion of "rent" from self-employment income:

should be applied to exclude only payments for use of space, and, by implication, such services as are required to maintain the space in condition for occupancy. If the owner performs additional services of such *substantial* nature that compensation for them can be said to constitute a material part of the payment made by the tenant, the "rent" received then consists in part of income attributable to the performance of labor which is not incidental to the realization of return from passive investment. * * * [Emphasis added.]

In cases where "substantial" services are rendered for the tenant, the entire tenant payment and the related deductions are included in computing "net earnings from self-employment." Sec. 1.1402(a)-4(a) and (c)(2), Income Tax Regs.; *Bobo v. Commissioner*, 70 T.C. 706, 709 (1978).

Petitioners argue that the reference to "warehouses" in section 1.1402(a)-4(c)(2), Income Tax Regs., is an indication that income generated by businesses such as Sentry's should be excluded from the term "rentals from real estate." "Warehouses" and "storage garages" are mentioned in the regulation as examples of situations where services are, or might be, rendered to the occupants.[2] Services are considered rendered to the occupant if they are primarily for the occupant's convenience. Sec. 1.1402(a)-4(c)(2), Income Tax Regs. Even in situations where services are rendered for the occupant, we must still decide whether

[2]The regulation appears to be based on language contained in S. Rept. 1669, 81st Cong., 2d Sess., reprinted in 2 U.S. Code Cong. & Admin. News 3287, 3454 (1950).

such services were substantial in nature. *Delno v. Celebrezze, supra* at 163. We do not think that the nomenclature of the examples used in the regulation controls the determination of whether substantial services were actually rendered to the occupant.

Whether services are considered as rendered to the occupant within the meaning of section 1.1402(a)-4(c)(2), Income Tax Regs., raises a question of fact. This question can be resolved by determining whether such services are required to maintain the space in condition for occupancy. If the answer is yes, then the services are not considered as rendered to the occupant. In this regard, the services listed in section 1.1402(a)-4(c)(2), Income Tax Regs., as those which are required to maintain the space in condition for occupancy are only illustrative. *Bobo v. Commissioner, supra* at 710.

In *Bobo v. Commissioner, supra,* we found that taxpayers who owned and rented spaces in a mobile home park had properly excluded their mobile home park earnings from the computation of self-employment income because the earnings constituted rentals from real estate. The Government had argued that the taxpayers provided services to their tenants and that such services precluded treating the earnings as "rentals from real estate" within the meaning of section 1402(a)(1). We found that providing services such as sewage, vacant trailer maintenance,[3] utilities, trash collection, and grounds maintenance were clearly services required to maintain the space for condition of occupancy within the meaning of section 1.1402(a)-4(c)(2), Income Tax Regs. *Bobo v. Commissioner, supra* at 710, 711. We see no distinction between the nature of these services and those such as cleaning, sweeping, painting, and other general maintenance and grounds work which were provided by Sentry. These are services required to maintain the space in condition for occupancy. Indeed, were we to find that services of this nature preclude the applicability of the exclusion for "rentals from real estate," we would for all intents and purposes be eliminating the exclusion entirely.

---

[3]The taxpayers also owned and rented several mobile homes that were located in the mobile home park. *Bobo v. Commissioner,* 70 T.C. 706 (1978).

In *Bobo v. Commissioner, supra,* the taxpayers also provided laundry facilities to the tenants of the mobile home park. We found that the laundry service was clearly rendered for the convenience of the tenants and not to maintain the property in condition for occupancy. Nevertheless, we found that the laundry service was not so substantial that a material part of the tenant payments was for that service. "Services rendered to occupants" within the meaning of section 1.1402(a)-4(c)(2), Income Tax Regs., must be of "such substantial nature that compensation for them can be said to constitute a material part of the payment made by the tenant." *Delno v. Celebrezze, supra* at 163; *Bobo v. Commissioner, supra* at 711.

Sentry provided some services that were for the convenience of the tenants. The soft drink machine, contents insurance,[4] and the sale of locks, packaging materials, and pallets, fall within this category. Sentry also provided tenants with advice regarding packaging techniques and how much storage space they would need. However, based on the record before us, it is impossible to find that these services were substantial and that a material part of the unit rental payments was made for these services. There is no evidence regarding the amount or percentage of time devoted to providing these services. There is also no evidence of the amount of income generated by the sale of locks, packaging materials, and pallets. Sentry's partnership return simply describes all 1982 receipts as "gross rents."[5] Given the nature of these services and considering the nature of Sentry's business, which was the rental of *self*-storage units, we view such services as minor and incidental. See *Bobo v. Commissioner, supra* at 711.

*Decision will be entered for the respondent.*

[4] The terms of the contents insurance are unclear. It is also unclear whether tenants were charged additional amounts for insurance and, if so, whether a significant number of tenants bought insurance.

[5] The parties stipulated that "All of the income received and reported by Sentry in 1984 [sic] was rental income." Since the tax year in issue is 1982, we assume that the stipulation of facts refers to 1982. Separate sales receipts from soft drinks, insurance, locks, packaging materials, and pallets, would not be "rentals from real estate," but might indicate the scope and significance of those services in Sentry's overall rental business. See *Bobo v. Commissioner, supra* at 711; *Johnson v. Commissioner,* 60 T.C. 829 (1973).