EUGENE F. CINELLI AND THE ESTATE OF CATHERINE J. CINELLI, DECEASED, EUGENE F. CINELLI, PERSONAL REPRESENTATIVE, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Cinelli v. Commissioner
Docket No. 26174-88
United States Tax Court
T.C. Memo 1991-29; 1991 Tax Ct. Memo LEXIS 49; 61 T.C.M. (CCH) 1728; T.C.M. (RIA) 91029; January 28, 1991, Filed *49 Decision will be entered under Rule 155. Barbara A. Schneider, Kendall O. Schlenker, and Alan Konrad, for the petitioners. Thomas F. Eagan, for the respondent. GOFFE, Judge. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION The Commissioner determined deficiencies in petitioners' income tax for failure to pay self-employment tax as provided under section 1401, [1] for the taxable years 1984, 1985, and 1986 and additions to tax for the taxable year 1985 as follows: Additions to Tax
Taxable
Sec.
Sec.
Sec.
Year
Deficiency
6661(a)
6653(a)(1)
6653(a)(2)
1984
$ 4,660
--- --- ---
1985
$ 7,185
$ 2,032
$ 359
* 1986
$ 4,101
--- --- ---
After concessions, [2] we must decide whether income received from the lease of a portion of petitioners' property is subject to self-employment tax, and if so, whether petitioners are liable for the addition to tax for substantial understatement of income *50 tax liability, pursuant to section 6661, for 1985. FINDINGS OF FACT Some of the facts in this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioners were residents of Albuquerque, New Mexico, at the time the petition was filed. The activities with which we are concerned in this case involve Eugene F. Cinelli. Accordingly, all references to petitioner in the singular are to Eugene F. Cinelli unless otherwise noted. In 1968, *51 petitioner purchased from a Mr. Barney Oldfield a building which contained a restaurant named Barney's Steak House. The building consisted of several large areas which contained a dining room, a lounge, and a kitchen. Petitioner established a package liquor business in the front of the building. He also established a lounge or bar immediately behind the package liquor store. Petitioner did not use the dining room or the kitchen. The kitchen is located at the rear of the building. In 1969, petitioner met Joe Pickle (Pickle) through a mutual friend. Pickle had been in the restaurant business for a number of years in various locations. After meeting for several hours, petitioner and Pickle orally agreed that Pickle would use the kitchen and dining room in petitioner's building rent-free for 1 year to test the potential for a restaurant operation. As a component of the arrangement, petitioner made it a strict requirement that Pickle pay for restaurant supplies on a cash basis. The purpose of this condition was to protect petitioner from a possible lien being placed against his property. Apart from this rule, petitioner and Pickle agreed that petitioner would have nothing to *52 do with the restaurant business and that Pickle would have nothing to do with petitioner's liquor business. At the conclusion of the 1-year trial arrangement, Pickle concluded that he could successfully operate a restaurant in petitioner's building. Petitioner and Pickle agreed that Pickle would pay rent of $ 300 per month for the use of the kitchen and a part of the building called the "common area." This is the portion of the building in which the dining area is located. It contains tables for customers at which both the food from the restaurant and drinks from petitioner's bar were sold. The kitchen is physically separated by wrought iron doors to the common area which are locked when the restaurant is not operating. When petitioner opened his business in the building, he operated the bar and lounge and package liquor store but did not use the kitchen in any capacity. Petitioner and Pickle agreed to continue to operate their respective liquor and restaurant businesses independently. The separateness of the business operations is explained in detail below. In 1973, petitioner and Pickle changed the rental agreement to 8 percent of the restaurant's gross income. No other *53 changes were made in their agreement. In 1979, Pickle incorporated his restaurant business, pursuant to New Mexico law, as Gino's Kitchen, Inc. (Gino's Kitchen), and executed a formal lease on its behalf with petitioner. During the taxable years in question, Pickle was sole owner of Gino's Kitchen. Although the relationship became more formalized by reason of the incorporation, there was no substantive change in the manner in which petitioner and Pickle operated their respective businesses. In 1983, Gino's Kitchen, through Pickle, agreed to increase the rent to 12 percent of the restaurant's gross income. Petitioner and Pickle continued to operate their respective businesses independently of one another. Petitioner's bar and package liquor store operations were known as "Gino's Lounge" before entering into the restaurant arrangement with Pickle. Petitioner subsequently advertised the business as "Gino's Restaurant & Lounge" in order to avoid confusion on the part of potential customers. Customers of Gino's Restaurant & Lounge are met at the entrance by a hostess employed by petitioner. A cocktail waitress employed by petitioner takes the customer's drink order, if any, and *54 maintains a check for only liquor sales. A waitress employed by Gino's Kitchen takes the food order, if any, and maintains a check of only food items. Throughout the meal, any additional food orders are taken by the food waitress employed by Gino's Kitchen, and additional drink orders are taken by the cocktail waitress employed by petitioner. A busboy employed by Gino's Kitchen keeps water glasses filled during the meal and clears the table of food plates at the completion of the meal, while the cocktail waitress employed by petitioner removes glasses in which alcoholic beverages are served. At the end of the meal, if the customer has ordered both food and alcoholic beverages, the customer is then presented with two checks stapled together. One of the checks represents the food items ordered by the customer and the other is for the alcoholic beverages. The cashier, typically a bartender employed by petitioner, takes payment for both food and alcoholic beverages and records on the register the amount attributable to liquor sales, if any, the amount attributable to food sales, if any, and any tip. Tips from a customer are evenly divided between the cocktail waitress and the food *55 waitress. Requesting one payment from a customer for both the liquor and food checks was solely for the convenience of the customers of Gino's Restaurant & Lounge. At the conclusion of each shift, petitioner's bartender makes an inventory of the cash, credit card charge slips, and checks in the cash register. This interim accounting is then turned over to petitioner for his review. The money and tickets are kept in petitioner's office safe. The customers paid their checks for alcoholic beverages and food in cash, by check, and by charges on credit cards. Petitioner deposited all of the checks in his bank account and processed all of the credit card charges. Petitioner paid vouchers for items used by Pickle in the restaurant business. He accounted to Pickle weekly by totalling all of the receipts for food from which he deducted the 12 percent which petitioner was entitled to as rent and the total of all vouchers of Pickle's which he had paid during that week. Petitioner gave Pickle the previous week's food tickets, expense vouchers, and an adding machine tape showing the computation used to arrive at the net amount Pickle received. Pickle did not pay petitioner for collecting *56 the receipts or paying the expenses of the restaurant operation; however, the accounting performed by petitioner was not much more than was required in the operation of his lounge. This accounting procedure insured that petitioner received 12 percent of the receipts of the restaurant profits and protected him from any possible liens being placed against his property for unpaid bills attributable to the restaurant. The rental payment was only intended to compensate petitioner for rental of space in petitioner's building. No part of the rental payment was intended by petitioner or Gino's Kitchen to cover services performed by petitioner which were incidental to the rental relationship. Petitioner retained James Putelli, P.A., to prepare his monthly accounts and income tax returns. Petitioner paid self-employment tax for the taxable years at issue on the net income from his lounge and package liquor store. Gino's Kitchen employed Lewallen and Co., P.C., which prepared monthly accounts and income tax returns for the corporation. Lewallen and Co., P.C., also prepared personal income tax returns for Pickle. Petitioner does not share in the control or management of Gino's Kitchen. *57 Petitioner does not share in the profits or losses of Gino's Kitchen. Petitioner has no ownership interest in any of the assets of Gino's Kitchen. The rental agreement provides that petitioner or Gino's Kitchen, upon 30 days' notice, may terminate the relationship, at which time Pickle would be free to open a restaurant at any location and take with him the assets of Gino's Kitchen. Petitioner and Gino's Kitchen each have different employees. Petitioner cannot hire, fire, or otherwise discipline Gino's Kitchen's employees. Petitioner has no control over the business hours of Gino's Kitchen, and the restaurant, in fact, is open at different times from petitioner's bar and package liquor store. There have been instances where petitioner would have liked to provide more control over the restaurant's employees and hours of operation, but petitioner does not believe his contractual relationship gives him such power. Petitioner has no control over the content of the restaurant's menu, nor does he set the prices for the food. Petitioner maintains insurance on the building, but Gino's Kitchen has separate insurance covering the personal property used in the restaurant and worker's *58 compensation coverage for its employees. Advertisement costs for "Gino's Restaurant & Lounge" are split equally between petitioner and Gino's Kitchen. If, however, "help wanted" advertisements are placed, the separate business bears its own cost. No discounts are provided to petitioner or petitioner's employees should they dine at Gino's Kitchen. Similarly, no liquor discounts are available to Pickle or the employees of Gino's Kitchen at petitioner's establishment. Petitioner has his own Federal Tax Identification Number and a license to do business in Albuquerque, New Mexico, which does not cover Gino's Kitchen. Although petitioner and Gino's Kitchen rely, to some extent, on the same suppliers of goods and services, both operations maintain separate billing accounts. For example, petitioner and Gino's Kitchen order fruit for their respective businesses from the same company because that company has the best produce and service available, but the orders from petitioner and Gino's Kitchen are billed and paid separately. Deliveries by petitioner's suppliers are made to the front of the building where the package store is located. This section of the building also contains several *59 storerooms for inventory and petitioner's office. This area is occupied exclusively by petitioner and no restaurant deliveries are made to this entrance. The food delivery dock and storage area for Gino's Kitchen is located at the rear of the building and is occupied exclusively by the restaurant and its employees. As already noted, a wrought iron door separates the common area from the kitchen and is locked when the restaurant is not operating. Petitioners reported the income received from Gino's Kitchen, and the expenses related thereto, as rental income and expense on Schedule E, Supplemental Income Schedule, of each of their Forms 1040, Individual Income Tax Returns, filed for the taxable years 1984, 1985, and 1986. The Commissioner, in his deficiency notice, determined that the amount received by petitioner from Gino's Kitchen is income subject to self-employment tax and is properly includable on petitioner's Schedule C, Profit or (Loss) From Business or Profession (Sole Proprietorship), of the Form 1040, Individual Income Tax Returns for the same period. OPINION Section 1401 imposes a tax upon an individual's "self-employment income." Self-employment income is defined *60 in section 1402(b) as "net earnings from self-employment" derived by an individual during a taxable year. Section 1402(a), in turn, defines "net earnings from self-employment" as follows: (a) Net Earnings from Self-Employment. -- The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual * * * except that in computing such gross income and deductions * * * -- (1) there shall be excluded rentals from real estate and from personal property leased with the real estate * * * together with the deductions attributable thereto * * * Therefore, we must determine whether petitioner's receipt of payments from Gino's Kitchen constitutes rental income and thus qualifies for exclusion under section 1402(a)(1). If so, that amount is not subject to the self-employment tax. Respondent, relying upon section 1.1402(a)-4(c), Income Tax Regs., argues that petitioner provided services to Gino's Kitchen of a type not usually or customarily rendered in connection with the rental of space for occupancy only. The pertinent parts of section 1.1402(a)-4(c), Income Tax Regs., provide: *61 (c) Rentals from living quarters -- (1) * * * (2) Services rendered for occupants. Payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as for the use or occupancy of rooms or other quarters in hotels, boarding houses, or apartment houses furnishing hotel services, or in tourist camps, or tourist homes, or payments for the use or occupancy of space in parking lots, warehouses, or storage garages, do not constitute rentals from real estate; consequently, such payments are included in determining net earnings from self-employment. Generally, services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such service; whereas the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies, the collection of trash, and so forth, are not considered as services rendered to the occupant.
The example used to illustrate this paragraph involves an individual *62 who owns a building containing four apartments. In two apartments, the owner only rents space to tenants, while in the other two apartments the owner performs additional services for which the net earnings attributable to the services would be subject to the self-employment tax. Sec. 1.1402(a)-4(c)(3), Income Tax Regs.
Petitioner objects to the application of this regulation because it is a paragraph under the heading entitled "Rentals from living quarters" and Gino's Restaurant & Lounge does not contain living quarters. Sec. 1.1402(a)-4(c), Income Tax Regs. Respondent contends that the test applicable to petitioner's activities is actually under the label "Services rendered for occupants." Sec. 1.1402(a)-4(c)(2), Income Tax Regs.
We agree with respondent on this point. Section 1.1402(a)-4(c)(2), Income Tax Regs., unmistakenly includes "Payments for the use or occupancy of rooms or other space where services are also rendered to the occupant, such as * * * hotels * * * apartment houses * * * or payments for the use or occupancy of space in parking lots, warehouses, or storage garages." (Emphasis added.) Clearly, the use of the term "such as" merely highlights examples *63 covered by this regulation, but it is not intended to exclude situations not mentioned. Although helpful, labels or headings cannot change the express language of the Code or regulations. We will, therefore, apply section 1.1402(a)-4(c)(2), Income Tax Regs., to petitioner's activity to determine petitioner's liabilities for self-employment tax. As a preliminary matter, respondent advocates a broad interpretation of the self-employment tax provisions to favor inclusion of income as earnings from self-employment. This is due, in large part, to the Social Security Act Amendments of 1950 which extended the benefits and burdens of the Social Security program to self-employed individuals. Pub. L. 734, 64 Stat. 477. The concept of "net earning from self-employment" includes not only liability for self-employment taxes but also eligibility for Social Security benefits of self-employed individuals. 42 U.S.C. secs. 403(b), 411(a), and (b) (1988). This Court has construed section 1402(a) in pari materia with 42 U.S.C. sec. 411(a) to maintain the "symmetrical parallel between the social security eligibility provisions for self-employed persons and the corresponding income tax provisions *64 for taxing self-employed persons for social security purposes." Johnson v. Commissioner, 60 T.C. 829, 833 (1973). "Just as 'net earnings from self-employment' is the touchstone of self-employment taxation, it is likewise the measure of eligibility for social security benefits. 42 U.S.C. secs. 403(b), 411(a) and (b)." Estate of Ellsasser v. Commissioner, 61 T.C. 241, 247 (1973). Thus, the self-employment tax provisions are broadly construed to favor coverage for Social Security purposes. Rasmussen v. Gardner, 374 F.2d 589, 594-595 (10th Cir. 1967); Delno v. Celebrezze, 347 F.2d 159, 162 (9th Cir. 1965). Respondent argues, in keeping with the symmetry set forth above, that we must narrowly construe the rental exclusion in favor of treatment of income as earnings from self-employment. Estate of Ellsasser v. Commissioner, supra; Johnson v. Commissioner, supra.[3] Petitioner was properly paying self-employment tax due on net income from his business operations. This fully comports with the "symmetrical parallel" notions of the Social Security Act and the *65 self-employment tax on income. If and when it comes time for petitioner to apply for Social Security benefits, he will have been paying towards that fund as intended by the Code. Thus, reliance upon this policy-based argument is misplaced in this case. Respondent next contends that petitioner's services to Gino's Kitchen were "other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only." Sec. 1.1402(a)-4(c)(2), Income Tax Regs. By way of example, respondent offers a list of activities which were, in respondent's opinion, not usual or customary when renting space: (1) advertising as "Gino's Restaurant & Lounge," (2) providing a hostess to greet and seat customers when they arrived, (3) totalling customer's charges, taking customer's payments, making change for customers, (4) performing various accounting functions such as checking the receipts daily for errors, (5) paying restaurant expenses *66 out of the restaurant's gross receipts, (6) processing credit card slips and personal checks given by customers for payment, (7) providing a weekly accounting of receipts, taxes, expenses, and the rent calculation, and (8) holding money and food tickets in petitioner's safe for the benefit of Pickle and Gino's Kitchen. The proper test to apply in determining if these activities take petitioner out of the rental exception in section 1402(a)(1) was set forth by this Court in Bobo v. Commissioner, 70 T.C. 706 (1978). The question of fact to be resolved is whether the services which petitioner rendered to his tenant were required to maintain the space in condition for the tenant's occupancy and, if not, whether the services were substantial. Bobo v. Commissioner, supra at 710. It is clear that the individual items enumerated by respondent were not required in maintaining the space in condition for occupancy. The services exceed some minimal effort at keeping the structure safe for tenancy. We turn now to the second portion of the test: whether the services were substantial enough to classify the payments by Gino's Kitchen to petitioner *67 as received for "services rendered to the occupant" within the meaning of section 1.1402(a)-4(c)(2), Income Tax Regs.Bobo v. Commissioner, supra at 711. The services which petitioner and his employees rendered cannot be held to be substantial within the meaning Bobo v. Commissioner, supra.They were rendered for the benefit of petitioner and the "joint" customers of the businesses conducted by petitioner and Gino's Kitchen. The arrangement between petitioner and Gino's Kitchen provided distinct benefits to petitioner. Joint advertising is obviously less expensive to both parties than would be separate advertising. Providing one hostess to greet and seat the customers was an aid to selling alcoholic beverages as well as food. The cashier and accounting services provided by petitioner insured that he received the 12-percent rent based upon all of the receipts of Gino's Kitchen. Paying the expenses of Gino's Kitchen benefitted petitioner by insuring that Gino's Kitchen did not incur debt for supplies which would constitute a lien on its assets which were located in petitioner's building. Moreover, the accounting by petitioner *68 provided him with knowledge as to the profitability of Gino's Kitchen which would be an important factor to him in evaluating the sufficiency of the rent. We recognize that a landlord holding a lease based upon gross receipts has some knowledge of the success of his tenant's business but a landlord who also pays the expenses of his tenant knows a great deal more about the success of the tenant's business. Some of the services provided by petitioner were for the benefit of the customers and, therefore, contributed to the success of the operations of both of the businesses. It would be extremely awkward to pay separate checks for the alcoholic beverages and the meals. If a customer paid by credit card, it would usually mean a small charge on one credit card slip for the alcoholic beverages and a large charge on the other credit card slip for the meals. If that were the way that petitioner and Gino's Kitchen operated, petitioner would be paying a proportionately larger processing charge to the credit card issuers than would Gino's Kitchen. To satisfy this portion of the test, the "prescribed services must be of 'such substantial nature that compensation for them can be said to *69 constitute a material part of the payment made by the tenant.'" Bobo v. Commissioner, supra at 711, citing Delno v. Celebrezze, supra at 163. As we pointed out above, the services provided by petitioner conferred mixed benefits to Gino's Kitchen, the customers, and to petitioner. Some of the services provided would have been performed by petitioner if Gino's Kitchen had not rented the space. Petitioner would have probably advertised the lounge; he would have employed a cashier and bookkeeper and accepted personal checks and credit card charges. Adding the business of Gino's Kitchen to these essential activities was not a material increase in these functions. We hold that the benefits to Gino's Kitchen were not substantial. In the instant case, therefore, we cannot say that these activities were services which were so substantial that a material part of Gino's Kitchen's payments were in exchange for them. These services were not separately stated, billed, and paid for. Respondent argues that Delno v. Celebrezze, supra, sets forth the standard against which services are measured to determine if they qualify *70 for the rental exception. Delno involved an application for old-age insurance benefits under the Social Security Act. The applicant owned a one-half interest in an apartment house and entered into an agreement with the owners of the other one-half interest to "'act as manager of said property and apartment house, collecting the rents and accounting for all income and expenditures.' In addition to his share of profits, he was to be paid $ 300 per month, later increased to $ 400, 'as an operating expense * * * when the operation shows a net profit to the parties thereto.'" Delno v. Celebrezze, supra at 161. The managerial duties included a variety of services in addition to the passive receipt of rental income, such as cleaning apartments, emptying wastebaskets, providing laundry service, and cleaning and servicing the swimming pool. Delno v. Celebrezze, supra at 164. The Court of Appeals for the Ninth Circuit held that if one of the owners of an apartment house performed substantial services in addition to maintaining property in condition for occupancy, such services should be included in determining net earnings from self-employment. *71 Delno v. Celebrezze, supra at 166. In Delno the Social Security applicant was expressly paid a fixed sum for services beyond the simple receipt for the rental of space. In the instant case, however, petitioner was not paid a fee separate from the rent for any of the services rendered. Respondent admits that the petitioner's activities were of mutual economic benefit to petitioner and his tenant. Delno was concerned with the services which the applicant provided solely to the apartment tenants beyond ministerial functions. It was properly presumed that the taxpayer was paid something for this unilateral benefit conferred upon the tenants. Respondent also relies upon the position of the Internal Revenue Service contained in Rev. Rul. 64-64, 1964-1 C.B. (Part 1) 320. Revenue rulings represent the views of the National office of the Internal Revenue Service. Rev. Proc. 89-14, 1989-1 C.B. 814, 815. It is well established that such rulings do not have the effect of a regulation or a Treasury Decision. [4] We look upon them merely as the position of one of the parties before the Court. *72 Stubbs, Overbeck & Associates v. United States, 445 F.2d 1142, 1146-1147 (5th Cir. 1971); Peoples Trust Co. of Bergen County v. United States, 444 F.2d 193, 197 (3d Cir. 1971); Estate of Lang v. Commissioner, 64 T.C. 404, 407 (1975). In the ruling, an individual, who was the "occupant" of business premises entered into an agreement with a corporation which was the owner of amusement and gaming machines whereby the corporation agreed to pay the individual a stipulated percentage of the receipts of the machines after deducting certain expenses. The individual purchases the tax stamps in his own name but is reimbursed by the corporation. Under the arrangement, the individual makes change for customers, pays out prizes and winnings, and otherwise supervises the playing of the machines. The ruling holds that the services provided by the individual are primarily for the convenience of the corporation, the owner *73 of the machines, and that the services performed are other than those usually or customarily rendered in connection with the rental of rooms or other space only for occupancy. The ruling concludes that the income received by the individual from the corporation is not rental income but, instead, constitutes "net earnings from self employment." The ruling does not disclose whether the individual engaged in any business activity on the premises on his own behalf. The services performed by the individual to the corporation were essential to the business operations of the corporation. Such activities are distinguishable from those performed by petitioner in the instant case for the convenience of Gino's Kitchen. Respondent attempts to characterize petitioner's activities as services rendered primarily for the convenience of Gino's Kitchen. Respondent has failed to note that section 1.1402(a)-4(c)(2), Income Tax Regs., is written in the conjunctive, in that "services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only." *74 (Emphasis added.) We have concluded above that the services here were not of a sufficiently substantial nature to satisfy the second portion of this test; therefore, we need not decide whether the services were provided primarily for the convenience of Gino's Kitchen. We point out, however, that respondent's contention is contrary to the record. Petitioner did not go out of his way for the primary convenience of Gino's Kitchen, the tenant, but rather for the joint convenience of himself and his own patrons. At a minimum, respondent has even admitted that all of the services provided by petitioner mutually benefitted petitioner and his tenant; ipso facto, the services were not primarily for the benefit of Gino's Kitchen. Accordingly, we find that no part of the rental payments made by petitioner's tenant, Gino's Kitchen, were for services. Thus, petitioner's net rental income from Gino's Kitchen is excluded from "net earnings from self-employment," because it constitutes rentals from real estate and from personal property leased thereon. Sec. 1401(a)(1). To reflect the foregoing, as well as concessions on the part of both parties, Decision will be entered under Rule *75 155.
Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable years 1984, 1985, and 1986, and Rule numbers refer to the Rules of Practice and Procedure of this Court.↩
*. 50 percent of the interest due on $ 7,185 for the taxable year 1985.↩
2. The parties stipulate that petitioners are not entitled to $ 3,737 of the deduction of mortgage interest expense which they claimed in the amount of $ 7,759 for the taxable year 1985. The parties agree that petitioners are not liable for additions to tax under sec. 6653(a)(1) and (2).↩
3. Ramsay v. Commissioner, T.C. Memo 1983-590↩.
4. Iske v. Commissioner, T.C. Memo 1980-61↩.