WILLIAM A. NORRIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Norris v. Commissioner
Docket No. 15808-89
United States Tax Court
T.C. Memo 1991-648; 1991 Tax Ct. Memo LEXIS 690; 62 T.C.M. (CCH) 1652; T.C.M. (RIA) 91648; December 30, 1991, Filed *690 An order denying respondent's motion to amend pleadings to conform to the evidence will be issued and decision will be entered for the respondent. William A. Norris, pro se. Paul Colleran, for the respondent. WOLFE, Special Trial Judge. WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A and Rules 180, 181, and 182. [1] Respondent determined a deficiency of $ 1,922 in petitioner's Federal income tax for 1986. After a concession by petitioner, the sole issue raised by the pleadings for decision with respect to petitioner's 1986 taxes is whether petitioner's losses from the rental of real property in 1986 should be offset against his law practice income for that year in the computation of petitioner's net earnings from self-employment for purposes of the self-employment tax. Repsondent has filed a motion to amend the pleadings, which raises the additional question whether we should grant respondent's motion under Rule 41(b) to amend his answer to add new issues so that the pleadings conform to the evidence presented at trial. Respondent's proposed amended answer involves the following additional issues: (1) *691 Whether petitioner omitted from his gross income on his 1986 return $ 86,109 in long-term capital gain from the sale of a house; (2) whether petitioner omitted from gross income on the 1986 return $ 11,948 in long-term capital gain from the sale of land; and (3) whether petitioner is liable for additions to tax for negligence under section 6653(a)(1)(A) and (B) and for substantial understatement of income tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioner resided in Northampton, Massachusetts, when his petition was filed. Petitioner timely filed his 1986 Federal income tax return (the return), and indicated on the return that his filing status was "married filing separate *692 return." Petitioner and his wife, Susan Norris, were divorced in 1987. Petitioner submitted a second Form 1040 for the 1986 tax year on September 3, 1987 (petitioner's second Form 1040). Petitioner submitted a third Form 1040 on May 9, 1989 (petitioner's third Form 1040). After the trial in this matter, petitioner apparently mailed to the Internal Revenue Service Center, Andover, Massachusetts, a fourth Form 1040, dated October 31, 1990 (petitioner's fourth Form 1040). Petitioner attached a copy of this form, a forwarding letter, and a copy of a check to his reply brief. These attachments to petitioner's post-trial brief have not been received in evidence by stipulation or otherwise. Respondent's notice of deficiency is based on petitioner's original return. Petitioner's subsequently filed Forms 1040 were not accepted by respondent as amended returns. There is no statutory provision for an amended return, and the acceptance or rejection thereof is solely within the discretion of the Commissioner. Goldring v. Commissioner, 20 T.C. 79, 81 (1953). We consider these forms only as statements of petitioner's positions. See McCabe v. Commissioner, T.C. Memo 1983-325. *693 Petitioner was admitted to the practice of law in the Commonwealth of Massachusetts in 1965. In 1967, petitioner moved to western Massachusetts and opened a law office in Cummington, a town of approximately 600 residents. Petitioner was unable to earn sufficient income to satisfy his needs and wants from the practice of law in this small community. To generate additional income, petitioner sometimes bought and sold real estate. Between 1967 and 1986, petitioner carried out occasional real estate transactions in Berkshire, Hampshire, and Franklin Counties. During this period, petitioner also held property for rental. In 1978-80, 1983, and 1985, petitioner rented two properties. In 1969-71, 1976, 1981-82, 1983-84, and 1986, petitioner rented one property. In 1986, petitioner sold a house located in Windsor, Massachusetts (the Windsor house). Petitioner owned this property jointly with his wife Susan Norris. Petitioner's adjusted basis in the Windsor house at the time of the sale was $ 38,891. Petitioner did not report this sale on his 1986 return but indicated in line 13 that the Windsor house sale would appear on his amended return. On his second Form 1040, petitioner *694 reported $ 41,675 as the sale price of the Windsor house and reported a gain of $ 2,784. At trial, petitioner introduced evidence indicating that the gross sale price was $ 125,000. Petitioner testified that the difference between the sale price reported on petitioner's second Form 1040 and the gross sale price was due to terms of the sale and a division of the sale proceeds between petitioner and his wife pursuant to their divorce. At trial, petitioner was not prepared to introduce evidence corroborating his testimony as to the computation of his gain on the sale of the Windsor house. The Windsor house is a four-bedroom single-family house. Petitioner purchased this property in 1974, and petitioner and his family resided in the Windsor house before it became a rental property. Petitioner rented the Windsor house from 1983-86 and claimed depreciation deductions on his tax returns for each of those years. In 1986, petitioner also sold two adjoining parcels of land in Wendell, Massachusetts, for $ 11,948. Petitioner purchased this land with Fred L. Heyes III (Heyes) in 1973. The first parcel purchased was 40 acres of raw land. The second parcel was 35 acres. From the time *695 of purchase until 1986, petitioner testified that he and Heyes subdivided, showed, advertised, and marketed the property. In 1975, they sold a parcel of land to a third party for $ 9,750. In 1976, they sold a parcel of land to another third party for $ 5,000. In 1986, petitioner sold his remaining interest in the land to Heyes. Petitioner did not report this sale to Heyes on this return or his second or third Forms 1040. At trial, petitioner submitted index cards and deeds as evidence of his active involvement in the real estate business, and this evidence also indicated petitioner's 1986 sale of his remaining interest in the Wendell land to Heyes. After the trial in this matter, petitioner provided his views concerning this sale and the tax he thought was due on this sale on a copy of his fourth Form 1040, attached to his brief. On this form petitioner showed the gain from this sale as ordinary. In his post-trial brief petitioner stated that he had submitted to the Internal Revenue Service Center payment of income tax and self-employment tax on the gain as he calculated it. On Schedule G of his return, petitioner reported net earnings of $ 15,630 from his law practice. Petitioner *696 failed to file Schedule SE, Computation of Social Security Self-Employment Tax, and report a self-employment tax liability on his return, and he did not submit Schedule SE or reflect self-employment tax liability on his second or third Forms 1040. On his fourth Form 1040, petitioner included a Schedule SE and payment of self-employment tax. Petitioner now concedes that the earnings he received from his law practice are subject to self-employment tax. On his return, petitioner reported a net loss on Schedule E in the amount of $ 6,282 which was attributable to the rental of the Windsor house. On his third Form 1040, petitioner claimed this loss on Schedule C, and used this loss to offset his law practice income. Petitioner described his business on Schedule C as "Real estate operator and lessor." On June 15, 1989, respondent issued a statutory notice of deficiency addressed to petitioner for the 1986 taxable year. The deficiency determined in respondent's notice is the liability for self-employment taxes due on the net earnings from petitioner's law practice undiminished by petitioner's rental real estate loss. At trial, respondent made an oral motion for leave to file an amendment *697 to his answer to conform the pleadings to the proof pursuant to Rule 41(b). The Court took this motion under advisement. On February 5, 1991, respondent filed his motion for leave to file an amendment to answer in writing and filed the proposed amendment to answer. In the amended answer, respondent alleges that petitioner failed to report $ 98,057 of long-term capital gain from the sale of the Windsor house and the Wendell property on his original 1986 tax return. Due to the increase in petitioner's income, respondent contends that the deficiency for 1986 is $ 18,596, rather than $ 1,922. Respondent also contends that petitioner is liable for additions to tax for negligence and substantial understatement of income tax. OPINION Motion to Amend the Pleadings
This Court has held on numerous occasions that it will not consider issues which have not been pleaded. Markwardt v. Commissioner, 64 T.C. 989, 997-998 (1975). Nevertheless, Rule 41(b)(1) provides a procedure whereby in appropriate circumstances the pleadings may be amended to conform to the evidence presented at trial. Under this Rule, our consideration of respondent's motion is dependent on *698 whether the alleged new issues were in fact "tried by express or implied consent of the parties." Permitting the amendment of pleadings to conform to the proof is based on the theory that by such amendment the pleadings are brought in line with the actual issues upon which the case was tried, even though such issues were not stated in the pleadings as originally drawn. See DeHaai v. Commisioner, T.C. Memo 1989-127, citing Simms v. Andrews, 118 F.2d 803 (10th Cir. 1941). In this case, the new issues first were indicated at trial when petitioner submitted into evidence deeds showing on their face that the gross sale price of the Windsor house was $ 125,000, and that during 1986 petitioner had sold land located in Wendell. Petitioner introduced the deeds in the course of arguing that he was a real estate dealer for purposes of the self-employment tax issue only. The only issue raised in respondent's notice of deficiency is the self-employment tax issue. Petitioner did not expect and was not prepared to litigate income tax issues, and there is nothing in the record to indicate that he consented in any way to amendment of the pleadings to include *699 income tax matters. Neither party was prepared to try any of the new issues, and this circumstance is reflected in the trial record. The record does not contain sufficient testimonial or documentary evidence for this Court to decide the new issues proposed by respondent with any reasonable assurance of accuracy. An amendment to the pleadings would require a further trial to allow petitioner an opportunity to present evidence on the issues of any income tax due as a result of the Windsor house and Wendell land sales. To provide a second trial would be contrary to the established policy of this Court to try all issues raised in a case in one proceeding and to avoid piecemeal and protracted litigation. Markwardt v. Commissioner, supra at 998; Robin Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43 (1st Cir. 1975). The new issues raised in respondent's amended answer were not tried with the express or implied consent of the parties, respondent's motion is denied, and the new issues set forth in respondent's proposed amended answer are not presented for decision by this Court. Computation *700 of Self-Employment Tax
Respondent contends that petitioner cannot offset his law practice income with the rental loss generated from the Windsor house since petitioner was not a real estate dealer in the year at issue. In the alternative, respondent contends that regardless of whether petitioner was a dealer in the year at issue, the Windsor house was held as a capital asset, for investment or speculation, and not for sale to customers in the ordinary course of petitioner's business. Petitioner argues that the loss from the Windsor house rental should not be excluded from the determination of his net self-employment income because he was a dealer in real estate, and the Windsor house was held in his business during the year at issue. Section 1401 imposes a tax on self-employment income. Section 1402(a) generally defines "net earnings from self-employment" as gross income from a trade or business less allowable deductions attributable to such trade or business. Section 1.1402(a)-2(c), Income Tax Regs., allows an individual who is involved in more than one trade or business to aggregate income and losses from all trades or businesses in determining net earnings from self-employment. *701 Rentals from real estate and the deductions attributable thereto are excluded from the computation of net earnings from self-employment unless the rentals are received in the course of a taxpayer's trade or business as a real estate dealer. Sec. 1402(a)(1); sec. 1.1402(a)-4(a), Income Tax Regs.; Hopper v. Commissioner, 94 T.C. 542, 545 (1990). An individual who is engaged in the business of selling real estate to customers with a view to the gains and profits that may be derived from such sales is a real estate dealer. Sec. 1.1402(a)-4(a), Income Tax Regs. On the other hand, an individual who merely holds real estate for investment or speculation and received rentals therefrom is not considered a real estate dealer. Sec. 1.1402(a)-4(a), Income Tax. Regs. Where a real estate dealer holds real estate for investment or speculation in addition to real estate held for sale to customers in the ordinary course of his trade or business as a real estate dealer, only the rentals from the real estate held for sale to customers in the ordinary course of his trade or business as a real estate dealer and the deductions attributable thereto are included in determining *702 net earnings form self- employment. Sec. 1.1402(a)-4(a), Income Tax Regs. For the purposes of determining whether petitioner is a real estate dealer and whether the Windsor house was held in this capacity, the tests are those applied under chapter 1 of the Code in determining whether a person is engaged in the business of selling real estate to his customers. H. Rept. No. 1300, 81st Cong., 1st Sess. (1950), 1950-2 C.B. 255, 294-295; S. Rept. No. 1669, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 302, 354. Under chapter 1 of the Code, whether property is held by a taxpayer for investment or speculation or for sale to customers in the ordinary course of a trade or business is a question of fact. Cottle v. Commissioner, 89 T.C. 467, 486 (1987); Daugherty v. Commissioner, 78 T.C. 623, 628 (1982). Section 1202[2] provides favorable tax treatment for a long-term capital gain which is defined in section 1222(3) as gain from the sale or exchange of a capital asset held for more than 1 year. Section 1221 first defines the term "capital asset" as "property held by the taxpayer (whether or not connected with his business)" *703 and then excludes certain types of property from capital asset status. The first two statutory exceptions are: (1) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business. Sec. 1221(1) and (2). The purpose of the exceptions specified in section 1221(1) and (2) is to differentiate gains derived from the everyday operation of a business from those derived from appreciation in value over *704 a substantial period of time. Malat v. Riddell, 383 U.S. 569, 572, 16 L. Ed. 2d 102, 86 S. Ct. 1030 (1966). As used in section 1221(1), the word "primarily" means "of first importance" or "principally." Malat v. Riddell, supra.
Courts have considered several factors in deciding whether particular property is a capital asset: (1) The nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity, and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales. United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969); Cottle v. Commissioner, supra, at 487. These factors have no independent significance and are merely aids to help us in deciding whether petitioner held the Windsor house *705 primarily for sale to his customers in the ordinary course of his trade or business. Cottle v. Commissioner, supra at 488. Petitioner was a practicing attorney in a small town in western Massachusetts. He was unable to make a living which he considered satisfactory in the profession in which he was educated and sought other means to supplement his law practice income. However, petitioner was not a dealer in real estate, and he did not hold the Windsor house primarily for sale in the ordinary course of his trade or business. Petitioner's purchases and sales of real estate were occasional and isolated and were not indicative of a continuing business activity. Petitioner made no showing as to the details of the operation of his real estate activities or the profitability of those activities, and he did not present evidence that he conducted his real estate activities in a systematic and businesslike manner. Petitioner presented no evidence except his own unsubstantiated and unconvincing self-serving testimony to indicate that he was involved in activities that are ordinarily associated with property held by a taxpayer in the capacity of a real estate dealer. *706 He failed to provide corroborating evidence of any substantial and continuing sales activities, promotions, advertising, or any other indicia that he might have been engaged in business as a dealer in real estate. Since petitioner was not a dealer in real estate, the rental expenses for the year at issues cannot be used as an offset to petitioner's income from his law practice for self-employment tax purposes. An order denying respondent's motion to amend pleadings to conform to the evidence will be issued and decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the tax year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The subsequent repeal of this provision by section 301(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2216, does not affect the instant case. This repeal applies to tax years beginnings after Dec. 31, 1986.↩